GALLAGHER *v.* DEPARTMENT OF SOCIAL SERVICES

1. DIVORCE—CHILD SUPPORT.

Child support payments under a judgment of divorce are for the benefit of the child and should be considered the property of the child, not that of the parent.

2. DIVORCE—CHILD SUPPORT.

Child support is an independent obligation of the father, separate from his obligation to support his wife, and measured by the needs of the child.

3. DIVORCE—CHILD SUPPORT.

Child support payments under a judgment of divorce can be used only for the benefit and care of the child.

4. DIVORCE—CHILD SUPPORT—INCOME.

A mother has no property right in child support payments made under a judgment of divorce and the money is not the mother's income, even though she receives it for the use of the minor.

5. SOCIAL SECURITY AND PUBLIC WELFARE—AID TO THE DISABLED—PROPERTY QUALIFICATION—CHILD SUPPORT.

Termination by the Department of Social Services of the plaintiff's aid to the disabled grant because she was in possession of personal property in excess of the statutory maximum of $750 was improper where that decision was based on the ground that child support arrearages paid under the Uniform Reciprocal Enforcement of Support Act to her were her property (1954 AC, § 400.12).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6] 24 Am Jur 2d, Divorce and Separation § 827 *et seq.*
[5] 23 Am Jur 2d, Desertion and Non-Support §§ 128–155.
Construction and application of state statutes providing for reciprocal enforcement of duty to support dependents. 42 ALR2d 768.

6. SOCIAL SECURITY AND PUBLIC WELFARE—AID TO THE DISABLED—
CHILD SUPPORT—BURDEN OF PROOF.

*Child support arrearage payments received by a mother should
be considered* prima facie *her property for purposes of de-
termining her eligibility for aid to the disabled and such a
rule is warranted, in the absence of proof to the contrary,
because the mother already has the burden of proving her
eligibility for aid to the disabled and because the mother,
having spent her own money to support the child during the
time the support payments were not paid, may use the arrearage
for her own benefit.*

Appeal from Wayne, Cornelia G. Kennedy, J.
Submitted Division 1 February 4, 1970, at Detroit.
(Docket No. 7,113.)  Decided June 24, 1970.

Complaint by Clotilde Gallagher against R. Bern-
ard Houston, Director of the Department of Social
Services for aid to the disabled. Judgment for de-
fendant. Plaintiff appeals. Reversed and remanded.

*Alan W. Houseman* (Neighborhood Legal Services
Centers), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Maxine Boord
Virtue,* Assistant Attorney General, for defendant.

Before: LEVIN, P. J., and J. H. GILLIS and BRON-
SON, JJ.

BRONSON, J.  The issue presented is whether child
support arrearage payments are the property of
the mother for the purpose of determining eligibility
of aid to the disabled.

The department of social services terminated
plaintiff Clotilde Gallagher's aid to disabled grant

because she was in possession of personal property in excess of the statutory maximum of $750. The department based its decision on the ground that child support arrearages paid under the uniform reciprocal enforcement of support act to a mother who was receiving aid to the disabled assistance was the property of the mother.

Plaintiff, Clotilde Gallagher, a resident of Northville, Michigan, has been a recipient of public assistance from the State of Michigan since 1964, when in December she established eligibility for aid to dependent children. At that time, she was maintaining a home for her daughter, Anne, then aged 11. In March of 1965, plaintiff was found eligible for public assistance under the aid to the disabled program. In September of 1965, the aid to dependent children case was closed, there being no further need for assistance under that program for the reason that Anne was attending St. Joseph's Academy at Adrian, Michigan, and her expenses were met from private sources.

Plaintiff is severely handicapped, having had polio, which limits her mobility and demands the use of a crutch. She also suffers from rheumatoid arthritis and from heart complications. The plaintiff has been in and out of the hospital continually since she began receiving aid to the disabled. There is no question of her eligibility for this categorical assistance program. The only question as to her eligibility is whether she possessed personal property above the statutory maximum when she was terminated in August of 1967. The only period when the plaintiff did not receive aid to the disabled assistance was during the period in issue in this case, that is, from September, 1967, through April, 1968.

The plaintiff was abandoned by her husband, who left for Puerto Rico in the spring of 1964. A divorce

was obtained in the Wayne County Circuit Court, and a court order for both alimony and child support was entered on July 19, 1965. On January 19, 1965, an order for child support for Anne in the amount of $200 was entered in the general court of justice for the commonwealth of Puerto Rico. Amounts were originally set in the latter order for $200 per month, which was increased to $225 per month on August 24, 1965, to cover a large arrearage.

The termination of plaintiff from aid to the disabled in late August of 1967 arose out of an investigation by a caseworker for the department of social services on July 3, 1967. The caseworker had received from two or three banks reports indicating over $5,000 in checking and savings accounts, and in a time savings certificate. A representative of the department called the plaintiff on the telephone and informed her that she would be terminated by the next check, and the letter of termination was sent on August 29, 1967. Although an investigation continued, no attempt was made to communicate with the plaintiff nor to ask her assistance in order to clarify the matter. Before the hearing, the plaintiff was not given an opportunity to explain the source of ownership of the funds, nor given the opportunity to establish her continued need. On October 21, 1967, the plaintiff's attorney wrote to the defendant requesting a hearing. A hearing was held on November 9 of 1967.

At the hearing several accounts were indicated. These accounts totaled $5,105.22. $786.45 of this amount was held in a special checking account in plaintiff's name. The referee found that $395 in this account was Anne's money. Its source was gifts from a friend. The money was placed in the account so that the plaintiff could expend the money for

Anne's educational needs. The remaining $391.45 was found to be the property of the plaintiff, and this she does not dispute. Ten dollars, apparently plaintiff's money, was in another account.

$308.77 was held in a savings account in the joint names of the plaintiff and Anne. Monies deposited in this account had been used solely for Anne's school expenses. The referee found that the $308.77 represented personal savings of Anne and was not the property of the plaintiff.

$4,000 was in a time savings certificate in the joint names of the plaintiff and Anne. $2,756.45 of this amount came from bequests turned over to the plaintiff to be used for Anne's education and $325.37 came from Anne's personal savings. The balance of $918.18 consisted of the two child support arrearage payments of $474.18 and $444. The plaintiff testified that the entire amount on deposit in this savings certificate was being held to be used solely for Anne's education expense. The referee found that the two child support deposits were "not Anne's property, but income to Mrs. Gallagher, and as such, now set aside and converted to a bank deposit, must be considered available property to Mrs. Gallagher."

The $444 consisted of four checks sent by Mr. Gallagher pursuant to the uniform reciprocal support enforcement act to the friend of the court. The checks represented accumulated child support payments to cover arrearages. As indicated in the letters from the child welfare worker, most of the child support payments sent by Mr. Gallagher were in the amount of $111 while the uniform reciprocal support enforcement act order requires payments of $255 per month.

The $474.18 represents the amount of a bequest from the estate of an uncle to Anne's father. Pursuant to a court order issued by the probate court,

the bequest, while it was still part of the estate funds, was made payable to the friend of the court, in order to apply on past child support arrearages.

There is nothing in the record to indicate that the plaintiff accepted any public assistance or direct relief for Anne since the 1965 termination, although Anne might be eligible.

Summarizing, the referee found that $391.45 in the special checking account was the plaintiff's property, and this is not disputed; and that the two child support arrearage payments of $474.18 and $444 were also plaintiff's property, and this is disputed.

Anne was enrolled in St. Joseph's Academy in Adrian, Michigan, on the advice of Hawthorne Center where she was consulting. After Anne entered St. Joseph's Academy, her expenses were largely covered by private sources and gifts and from Anne's earnings.

While she was in the academy, Anne returned home weekends and her mother, the plaintiff, maintained a home purchased by her husband, including the making of mortgage payments. Some money was paid for her support from plaintiff's special checking account, but it does not appear whether the amount so paid represented expenditures by the plaintiff in excess of those for which she had received support money from Anne's father. In any event, there is no evidence that any particular portion of the two arrearage payments of $474.18 and $444 were applicable to expenditures by the plaintiff for Anne's support in excess of other support payments received from Anne's father.

On December 20, 1967, the director of the department of social services issued his decision upholding the county welfare department in their cancellation of the grant because, "as of the date of closing you own personal property in excess of the maximum of

$750 permitted for the eligibility for an aid to the disabled grant." He concluded that the two sums of $474.18 and $444, "coming from child support payments are legally your property inasmuch as they were income to you, thereafter converted to bank deposits." Thus, these two funds in addition to the balance of the special checking account amounted to a total of $1,309.63 of personal property and in excess of the $750 property maximum. All other monies in question were considered as property of the daughter, Anne.

On January 17, 1968, a claim of appeal was filed in the circuit court. On February 16, 1968, a complaint was filed. On March 8, 1968, defendant's motion to dismiss was denied in the Wayne County Circuit Court. On February 19, 1969, a hearing was held before a judge of the Wayne County Circuit Court and the appeal was dismissed. Judgment was entered upholding the decision of defendant that the Wayne County department of social services was correct in canceling plaintiff's aid to the disabled grant.

The trial court stated in its opinion that since the arrearage support payments were maintained by plaintiff Gallagher for at least a period of 90 days, this was "evidence that they were not immediately used or needed for the benefit of the child, became her [plaintiff's] funds, and in my opinion, she was not required to use those funds, paid on the arrearage, for the support of the child. She could do so if she chose to, but in my opinion, they were not subject to such trust that they could not be used for her benefit as well." Moreover, the burden was on the plaintiff to establish that the funds belonged to someone else and that "the disabled person here did not establish that the funds were not hers."

Plaintiff Gallagher was reinstated to aid to the disabled on April 22, 1968. According to the record the plaintiff received no public assistance or general assistance from either the state of Michigan or the county welfare department between August 29, 1967 and April 22, 1968. The amount of assistance of which she was deprived is not entirely clear, but it does appear to be a sum several hundred dollars greater than the $560 differential between the $1,-309.63 held to be her property and the $750 limitation.

This appeal requires an interpretation of Michigan Administrative Code, 1954, R 400.12 Rule 400.12 provides in pertinent part as follows:

"17(a) A person   *   *   *   will be considered ineligible on the basis of need for   *   *   *   aid to the disabled if he owns personal property   *   *   *   in excess of $750."

This rule was passed pursuant to statutes which provide:

"The commission may further define by rule the words 'permanently and totally disabled.'"  MCLA § 400.25 (Stat Ann 1968 Rev § 16.425[1]).

and

"After further investigation   *   *   *   , the amount and manner of giving assistance may be changed, or the assistance may be withdrawn if the state department finds the recipient's circumstances have changed sufficiently to warrant such action."  MCLA § 400.43 (Stat Ann 1968 Rev § 16.443).

An analysis of this issue and a review of the public policy underlying support payments to minors and welfare assistance to qualified recipients establishes that support payments are for the benefit of the child and should be considered the property of the child.

"[T]he maintenance of a child is a common-law obligation resting upon the father and enforced, in a divorce decree, under power conferred by statute. * * * The divorce statute relative to the custody and maintenance of children of the parties is in recognition of the common-law obligation resting upon the father and leaves it to the court to prescribe the amount to be paid by the father for such purpose. *The purpose is to assure support of the child,* and, as long as the need exists, the obligation and power remain." *West* v. *West* (1928), 241 Mich 679, 684. (Emphasis added.)

In order to effectuate this policy, Michigan statute safeguards and provides for the preserving and spending of these funds. CL 1948, §§ 552.251, 552.252 (Stat Ann 1957 Rev §§ 25.171, 25.172). *Herpolsheimer* v. *Herpolsheimer* (1947), 318 Mich 200.

"[T]he statute constitutes such children special wards of the court and makes it the duty of the court to safeguard their interests." *West, supra,* pp 685, 686.

The fact that support payments are not considered the property of the parent is recognized by the Internal Revenue Code and Michigan tax statutes.

"Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband." Internal Revenue Code § 71(b), 68A Stat 19 (1954), 26 USCA § 71(b).

The Michigan income tax act provides that the income subject to tax shall be "the same as taxable income as defined and applied to the subject taxpayer in the Internal Revenue Code, except as otherwise provided in the act." MCLA § 206.2 (Stat Ann 1970 Cum Supp § 7.557[102(3)]).

Policy dictates that, as far as support payment arrearage is related to aid to the disabled assistance, the mother should be considered a guardian, custodian, or trustee of the funds. This is more in tune with the mother's fiduciary responsibility in expending the funds. It is also a more realistic view in the determination of assistance programs.

This is not to say that this rule should be inflexible. Abuses should be correctable. However, the fact that abuses could occur is, in this Court's opinion, not a sufficient reason for ruling that these contested funds were the plaintiff's income for the purpose of determining her eligibility for aid to the disabled.

Defendant relies on *Sonenfeld* v. *Sonenfeld* (1951), 331 Mich 60, and *Renn* v. *Renn* (1947), 318 Mich 230. But the instant appeal can be distinguished.

First, these two cases hold that the arrearage should be considered the property of the mother because the mother had to spend her own income to support her daughter due to the default on the part of the husband. As previously mentioned, the evidence in this case does not establish that the arrearage payments were applicable to expenditures by the plaintiff for Anne's support in excess of other support payments received from Anne's father.

The second distinguishing factor is that the *Renn* rule is not a general rule.

"As regards income, appellant concludes that pursuant to the decree his income would be $5,527 whereas that of appellee would be $10,277. In reaching this result he treats the $5,200 annually, awarded in the decree for the maintenance of the children, as income to the appellee. The decree does not provide for alimony. Appellant by decree is bound to support his children until they reach the age of 18 years. This is not income that accrues to appellee [wife],

although she is given custody of the children and must look after the expenditure of the amounts paid by appellant." *Cartwright* v. *Cartwright* (1954), 341 Mich 68, 72.

For these two reasons, at least, *Sonenfeld* and *Renn* are not determinative of this appeal.

The remaining arguments of defendant state the legal rights of plaintiff. The existence of these legal rights is completely compatible with the legal duties of a guardian, custodian or trustee. Therefore, they too fail to be dispositive of this appeal.

The fact that child support payments were made to the mother instead of to the child does not alter the fact that those payments are for the benefit of the child and not the mother. Child support is an independent obligation of the father. It is separate from his obligation to support his wife. It is measured by the needs of the child. Child support payments can be used only for the benefit and care of the children. A mother and custodian has no property right in child support payments. The money is not the mother's income, even though she receives it to use for the minor.

Reversed and remanded for the entry of an order directing the defendant to pay the plaintiff the benefits she would have received that were not paid to her during the period her benefits were terminated.

LEVIN, P. J., concurred.

J. H. GILLIS, J. (*dissenting*). I dissent. In my view the child support arrearage payments received by plaintiff Gallagher should be considered *prima facie* her property for purposes of determining eligibility for aid to the disabled. I would affirm circuit court's determination that defendant Houston properly terminated plaintiff's welfare assistance.

In *Renn* v. *Renn* (1947), 318 Mich 230, 236, Mr. Justice DETHMERS formulated a rule which is applicable here:

"These payments on the arrears properly belong to plaintiff inasmuch as defendant [husband's] default in respect thereto necessitated plaintiff's paying the cost of the child's maintenance out of her own income."

My brothers distinguish *Renn* and its sibling, *Sonenfeld* v. *Sonenfeld* (1951), 331 Mich 60, on the ground that in this case no evidence appears establishing that the arrearages were applicable to expenditures by plaintiff for her daughter's support. To the contrary, the record clearly reflects that Anne returned home from St. Joseph's Academy on weekends, requiring support expenditures by her mother for food and shelter. The hearing referee noted:

"Mrs. Gallagher testified that Anne returns home weekends and that she is maintaining the home purchased by her husband and she is making mortgage payments on the home."

These expenditures from Mrs. Gallagher's own funds would otherwise have been allocable to the support payments required of Anne's father. Under these circumstances, both the *Renn* decision and *Sonenfeld* require the conclusion reached by circuit court:

"[I]n my opinion [Mrs. Gallagher] was not required to use those funds, paid on arrearage, for the support of the child. She could do so if she chose to, but in my opinion they were not subject to such trust that they could not be used for her benefit as well.

"In deciding this, I am not saying that a mother has the right to use the support payments for the children for her own purposes. I am saying, how-

ever, *that where a child is supported, a child who is living with the mother and from what sources the child is supported, that when the mother receives an arrearage, those funds need not be accounted for.* Payment on the arrearage, I should say, those funds need not be accounted for and they are paid to her and are received by her and are her funds in the Court's opinion." (Emphasis supplied.)

That there exists no evidence that any particular portion of the two arrearage payments of $478.18 and $444 were allocable to expenditures by the plaintiff for Anne's support is not, as the majority apparently conclude, dispositive. For once it appears, as here, that some portion of the arrearage payments were so allocable, the entire amount should then be treated *prima facie* the property of the mother. I reach this result for two reasons. First, both *Renn* and *Sonenfeld* suggest such a rule; for there is in neither opinion any reference to record evidence establishing that the husband's default necessitated payment by the mother out of her own funds of the cost of the child's maintenance. Rather, the Court's pronouncement may very well have been in recognition of an everyday experience. Specifically, where child support payments are in arrears, the mother's own funds are generally used to meet the cost of child maintenance. And, if I read *Renn* and *Sonenfeld* correctly, then the Justices had in mind a rule treating such arrearages as *prima facie* the property of the mother.

Furthermore, where as in this case of Gallagher, there is record evidence establishing that some portion of the arrearage payments were allocable to expenditures by the mother for child support, a rule treating the entire amount as *prima facie* property of the mother is warranted, in the absence of proof to the contrary, by reason of plaintiff's burden to prove

her eligibility for aid, a burden my Brothers do not deny.

Whether plaintiff Gallagher was or was not compelled by reason of her husband's default to support Anne from her own funds to such an extent that, as a result, the arrearage payments lawfully accruing to her exceeded $348.55* was a matter of proof for presentation before the hearing referee. And, on this question, plaintiff carried the burden to prove she spent less than this amount. Since no evidence was introduced before the referee establishing that plaintiff's support for Anne was less than $348.55, I would hold, contrary to my colleagues, that plaintiff failed to meet her burden of proof.

Circuit court should be affirmed.

---

* If such support exceeded $348.55, then plaintiff would have owned property in excess of the statutory maximum of $750: *i.e.,* arrearages in excess of $348.55 and money in the amount of $401.45.