KALTER v KALTER

Docket No. 87504. Submitted May 13, 1986, at Detroit. Decided
    October 6, 1986. Leave to appeal denied, 428 Mich 862.
    Plaintiff, Judith A. Kalter, and defendant, Alan T. Kalter, were
        divorced in 1979. Custody of their minor child was granted to
        the plaintiff and the defendant was ordered to pay child sup-
        port. As part of the divorce judgment, plaintiff gave the defen-
        dant a $2,000 lien on the marital home, payable on the occur-
        rence of certain specified events. All claims to alimony were
        barred. Plaintiff thereafter brought a petition in the Oakland
        Circuit Court for modification of the judgment of divorce with
        respect to an increase in child support. A referee for the
        Oakland County Friend of the Court Referee Section conducted
        a hearing and recommended that defendant's child support
        obligation be increased. The Oakland Circuit Court thereafter
        entered an order increasing defendant's child support obliga-
        tion from $100 per week to $155 per week, retroactive to the
        date of plaintiff's petition. Plaintiff objected and, following a de
        novo review, the Oakland Circuit Court, Steven N. Andrews, J.,
        ordered that defendant pay $155 per week and that defendant
        was entitled to a $2,000 setoff of a $2,377.20 arrearage in
        support payments in satisfaction of defendant's lien on the
        marital home, which had been sold. Plaintiff appeals.
        The Court of Appeals held:
        1. The trial court properly determined that defendant's child
        support payments should be increased from $100 per week to
        $155 per week. The court properly declined to consider as
        expenses attributable to the support of the child one-half of
        plaintiff's living expenses for such items as mortgage payment,
        insurance, car payment, utilities and taxes.
        2. It was equitable to credit the retroactively-created arrear-
        age of $2,377.20 with the $2,000 that plaintiff owed the defen-
        dant as a result of the sale of the marital home.
        Affirmed.

REFERENCES

Am Jur 2d, Divorce and Separation §§ 1039-1043, 1078-1081.
See the annotations in the Index to Annotations under Custody and
    Support of Children.

1. DIVORCE — CHILD SUPPORT.

   Child support should be based on the child's needs as well as the parents' ability to pay, but all any parent should be required to pay, regardless of his or her ability, is a fair share of the amount actually necessary to maintain the child in a reasonable standard of living.

2. DIVORCE — CHILD SUPPORT.

   A custodial parent who is employed should also contribute fairly to the maintenance of the parent's child.

3. DIVORCE — CHILD SUPPORT — INCREASES IN CHILD SUPPORT — RETROACTIVITY.

   A trial court is not required to make an increase in child support payments retroactive to the time that a petition for such an increase was filed; therefore, the court may in equity properly apply a debt owed by the petitioner to the respondent to an arrearage in child support payments which was created when an increase in child support payments was ordered retroactive to the date of the filing of the petition for an increase.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Denise R. Alexander*), for plaintiff.

*Brukoff, Beras & Stewart, P.C.* (by *William M. Brukoff*), for defendant.

Before: HOOD, P.J., and WAHLS and P. C. ELLIOTT,* JJ.

P. C. ELLIOTT, J. At a hearing for increased child support, Judge Steven N. Andrews ruled as follows (we add facts by footnote):

> The pertinent facts presented to the Court are as follows: The parties were divorced on January 10, 1979. Custody of the minor child, Barrett, was granted to the plaintiff mother, and the defendant father was ordered to pay child support in the amount of $100 per week.
>
> As part of the divorce judgment, the plaintiff gave the defendant a $2,000 lien on the marital

---

* Circuit judge, sitting on the Court of Appeals by assignment.

home,[1] payable on the occurrence of certain specified events. All claims to alimony were barred.

Pursuant to plaintiff's motion for an increase in child support, a hearing was held by the Friend of the Court on May 24, 1984.

In its order of September 5, 1984, this Court increased the amount of child support to $155 per week, effective April 5, 1983. The parties agree that this has resulted in a gross arrearage of $2,377.20.[2]

This Court now reviews, de novo, plaintiff's motion for increased child support.

Having reviewed the transcript of the hearing conducted before the Friend of the Court, this Court finds that the incomes of both the custodial and non-custodial parents have increased since the divorce, although the father's increase has been greater than the mother's. During the year prior to the judgment of divorce, plaintiff's income was $17,545 and defendant's income was $40,999. In 1984 plaintiff's income was $33,500 and defendant's income was $200,000.

The Court also finds that the child's basic needs are being met, and the parties are in agreement on this.[3]

Any increases in the child's needs are those due

---

[1] Mr. Kalter had to pay income taxes of $2,000 on his capital gain when he deeded his interest in the marital home to Mrs. Kalter, who agreed to give him a lien in that amount.

[2] The arrearage was solely due to the retroactivity of the increase to the date of the petition. Before the retroactive order, the father was paid ahead because he voluntarily increased his support payments from $100 per week to $500 per month. He also voluntarily increased his support to $155 per week after the referee's recommendation and before the increase was ordered by the court.

[3] In addition to the court-ordered support and his voluntary increase, Mr. Kalter was paying $4,000 for his son's orthodontic work at $70 per month, about $25 per month for medical expenses not covered by the mother's insurance, $300 for summer camp, approximately $500 per year for extra clothing and, until the mother removed the child from a private school, each parent paid a share of that annual expense. The father exercises regular visitation at his own home and has taken the boy to Disney World, the theater in New York City and on vacations in Northern Michigan. He gives his son an allowance and buys software for the boy's computer.

to his age and social development, and the increased cost of living.

The issue before the Court, therefore, is defendant's proper contribution to the income available to elevate the standard of living of Barrett and, incidentally, the plaintiff.[4]

A court has discretion as to modifications in child support, and the burden is on the petitioning party to show that a change in circumstances justifies the modification requested. *McCarthy v McCarthy,* 74 Mich App 105 [253 NW2d 672] (1977). Support payments are not property of the custodial parent, and are for the sole benefit of the child, measured by the needs of the child. *Copeland v Copeland,* 109 Mich App 683 [311 NW2d 452] (1981).

To estimate the cost of supporting Barrett, the plaintiff cites those expenses which are solely and directly attributable to him, such as tennis lessons and haircuts. She then estimates other living expenses such as mortgage payment, insurance, car payment, utilities, and taxes, adds them, and then divides by two.

The Court is unpersuaded by plaintiff's economic theory. Many of the expenses plaintiff enumerates are affected minimally, if at all, by the fact that Barrett resides with the plaintiff. Certainly she could not maintain her current standard of living on half of what it now costs, but for Barrett's presence.

The Court finds, therefore, that based on the changed circumstances, to-wit, the increased cost of living and Barrett's age and social development, an increase in child support from $100 per week to $155 per week is reasonable.

As to the $2,377.20 arrearage in support payments incurred by defendant, he argues that he is entitled to a $2,000 setoff because of the lien which became payable upon the occurrence of certain

---

[4] The mother testified that her neighbors were professional people: "They go on skiing trips. We don't. We go out to Metro Park. I would like to be able to go with our friends, the friends of our family, on things like this."

conditions, one of which, the sale of the marital home, has occurred.

Plaintiff argues that there was an oral modification of the divorce judgment, and the defendant is estopped from seeking an offset. However, at the May 23, 1984 hearing before the Friend of the Court, the plaintiff acknowledged that this is "a continuing obligation" that she would have to "make some arrangement for." Transcript at page 36.

The Court finds that the defendant father is entitled to a $2,000 offset in satisfaction of the lien, and that the total amount of the defendant's arrearage is $377.20.

We agree with Judge Andrews. It is improper to consider for the purpose of setting child support one-half of the plaintiff mother's expenses for her car, condominium, utilities and insurance to be money spent on behalf of her son. Some of those living expenses may be increased somewhat by him, but she would have the bulk of those expenses without him. A portion of her mortgage payment is an investment. The needs of the boy, realistically shown by the plaintiff's testimony, are adequately met by support payments from the father of $155 per week which total $8,060 annually.

Plaintiff argues that a customary percentage of the father's greatly increased income would result in a much larger support figure. Her request for $320 per week finds support in proposed guidelines. The Child Support Manual, submitted on May 22, 1986, by the Friend of the Court Bureau to the State Court Administrator's Office to the Friend of the Court Advisory Committee, suggests the following computations:

1. Defendant's annual net income, $160,000, plus plaintiff's $24,000, totals $184,000 or a total net family income of $3,538 per week;

2. A table in the manual states support for one child from both parents should be $175 on the first $1,100 of net family income and ten percent of any excess over $1,100;

3. The resulting sum is $175, plus $243.80, totaling $418.80 per week, or $21,777 per year, as support for one child;

4. Of this amount the manual recommends that the father pay eighty-seven percent, (his net income, $160,000, divided by the total net income of both parents, $184,000);

5. Thus, the manual would compute Mr. Kalter's weekly support obligation at $367, or more than $19,000 per year.

This demonstrates that guidelines and percentages used without limitation are unrealistic and unfair when both parents have substantial incomes. See *Stanaway v Stanaway*, 70 Mich App 294; 245 NW2d 723 (1976). Support should be based on the child's needs as well as the parents' ability to pay. *Cochran v Buffone*, 137 Mich App 761, 766; 359 NW2d 557 (1984). When a parent has an ability to pay a large amount of support, the determination of a child's needs can be generous, but all any parent should be required to pay, regardless of his or her ability, is a fair share of the amount actually necessary to maintain the child in a reasonable standard of living. Court-ordered support that is more than reasonably needed for the child becomes, in fact, tax-free alimony. When the custodial parent is employed, that parent should also contribute fairly to the maintenance of the child. This Court has stated on this point as follows:

> The plaintiff wife, however, should not be relieved entirely of her obligation to support the children solely because the defendant husband

may happen, for whatever reason, to be financially able to support the children without assistance. [*Beverly v Beverly,* 112 Mich App 657, 662; 317 NW2d 213 (1981).]

At some point, too much money can be bad for a child. Also, a court order for excessive child support can harm the relationship with the child when a parent is ordered to pay too much. A father should take his son to ball games and on trips and make gifts because he wants to do those things. He may contribute more voluntarily, as Mr. Kalter has done.[5] A father who feels that he is being taken advantage of by an unfair order may bitterly fail to develop the close relationship the child or children need. Later, he may be unwilling to contribute to a college education that the law cannot command if it was not agreed to in a consent judgment. *Arndt v Kasem,* 135 Mich App 252; 353 NW2d 497 (1984).

Mr. Kalter expressed his point of view very well before the referee:

I would be willing, based on my ability to pay and the possibility that there are other increases as Mrs. Kalter may have pointed out, to increase the child support from $5200 a year that was originally requested or demanded by the Court by 50 percent to $7800. I think a 50 percent increase over five years is a good one.

---

[5] See footnote 3, *supra,* and *Riley v Riley,* 319 Mich 74, 78; 29 NW2d 143 (1947):

$40 per week will just barely pay for proper food, clothing and other expenses of the children under the present conditions. We are not satisfied that defendant's large earnings would justify an increase of the amount to be paid for the children at the present time. We must assume that defendant is fond of his children, and if they require some extraordinary expenses on account of their health or education he will willingly pay it.

And, should there be private schooling, to increase the portion that I would pay from one-third —two-thirds to 75 percent. I would be willing to pay for summer camp if she decided Barrett should attend and pay 75 percent of that also. And to continue to pay all medical expenses.

The reason I would feel that, make that recommendation, is that I think that's in line with some of the increases that have come about and to cover some of the needs that Barrett probably has as he gets older. And as costs have gone up and my ability to pay has gone up.

I think beyond that becomes changing not only his quality of life but the quality of life of the household that he is in. Which, in turn, is changing Mrs. Kalter's quality of life. And I think that, then, all of a sudden falls into another area. I think now I am supporting her lifestyle and I think that's alimony and I believe we negotiated that there would be no alimony and in exchange for that she received the house which she received a $21,000 profit on. She received a car which was worth several thousand dollars. She received the entire savings account that we had of several thousand dollars. She received all the household furnishings. In fact, everything I owned outside my clothing. And, in exchange for that, we agreed that there would be no alimony.

Further, we agree that it was equitable to credit the retroactively-created arrearage the defendant suddenly owed to plaintiff with the $2,000 she already owed to him. The trial judge was not required to make the increased order retroactive to the time of the mother's petition for an increase, *Cochran v Buffone, supra,* p 766, and the judge could properly apply such a debt to it in equity.

We recognize that either parent can request another investigation by the Friend of the Court if

she or he believes that there has been an increased need of the child or changed financial conditions since the petition in 1983. MCL 552.517; MSA 25.176(17). If such a request is made and the Friend of the Court determines that a modification is necessary, it shall petition for the increase or decrease.

Affirmed.