**In re BUTTES GAS AND OIL, Debtor.**

**FARMERS UNION CENTRAL EXCHANGE, INC., Movant,**

**v.**

**SECURITY PACIFIC NATIONAL BANK, et al., Respondent.**

**Bankruptcy No. 85–07494–H3–11.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 12, 1987.

Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

Alan S. Gover, Weil, Gotshal & Manges, Houston, Tex., for respondent.

N. Wyatt Collier, Houston, Tex., for movant.

## ORDER

LETITIA Z. TAITTE, Bankruptcy Judge.

Came on for hearing the Motion for Relief From Stay on Farmers Union Central Exchange, Inc. (Cenex) to permit offset, and after considering the stipulations of the parties, the memoranda of authority, and the argument of counsel the Court enters the following Order:

### I. *Facts*

Pursuant to an Operating Agreement dated February 1, 1973, Cenex was designated operator of the Miller 7X.2 well in Bowman County, North Dakota. On July 19, 1973, a memorandum of operating agreement dated July 12, 1973, styled Affidavit of Production Under Oil and Gas Lease ("Affidavit of Production") was filed in the real property records of Bowman County, North Dakota. The Affidavit of Production enumerates leases covering lands in Bowman County, North Dakota. The Affidavit of Production provides:

That the working interest in said Oil and Gas Leases is now owned and held by Cenex, Amax Petroleum, Rainbow Resources, Inc., Buttes Gas & Oil Co. ... and is committed to an Operating Agreement dated February 1, 1973, designating Cenex as operator ...

The Operating Agreement provides that Cenex shall have:

A first and preferred lien on the interest of each party covered by this contract and in party's interest in oil and gas produced and proceeds thereof, and ... to secure payment of all sums due from each party to Operator.

Cenex never filed the Operating Agreement in the real property records of Bowman County, North Dakota.

On November 15, 1985, Buttes Gas and Oil ("BGO") filed a voluntary Chapter 11 petition under the Bankruptcy Code. On December 20, 1985, an involuntary petition was filed versus Buttes Resources Co. ("BRC"), subsidiary of BGO. BRC consented to an order of relief under Chapter 11 of the Bankruptcy Code.

On January 22, 1986, BRC, Debtor, filed a complaint against Cenex for turnover of monies and accounts due and owing to Debtor pursuant to the terms of the Operating Agreement. The gross amount owing to Debtor was $33,047.10. This amount was deposited into the registry of the Bankruptcy Court by Cenex.

Cenex has paid all taxes and expenses to date for the operation of the Miller 7X.2 well, including Debtor's portion. Debtor currently owes Cenex $12,518.68 as a result of pre-petition taxes and operating expenses that Debtor has not paid. On October 15, 1986, Cenex filed a Motion for Relief From Stay Seeking an order from the court directing clerk to issue a check in the amount of $12,518.68 drawn against the funds currently in the registry of the court. Debtor does not oppose Cenex's Motion for Relief.

Security Pacific National Bank, Federal Deposit Insurance Corporation, The Bank of California, and Barclays Bank PLC ("Banks") object to Cenex's Motion for Relief. The Banks have loaned money to BGO, and as part of the security for these loans, BGO has executed a pledge of its working interest in the Miller 7X.2 well. The pledge is evidenced by a Deed of Trust, Security Agreement, Assignment of

Proceeds and Financing Statement ("Deed of Trust") dated March 19, 1982, filed in Bowman County, North Dakota on May 21, 1982. By virtue of the Deed of Trust, Banks assert a valid and perfected security interest in all revenues and other monies owed to Debtor by Cenex prusuant to the Operating Agreement without any reduction for the claimed right of setoff of Cenex.

## II. *Discussion*

We begin with the basic premise that this transaction is not a traditional setoff. Setoff involves mutual debts or mutual credits between the estate of a debtor and a creditor whereby claims arising out of different transactions or occurrences are offset. *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y.1982); *In re Monogahela Rye Liquors,* 141 F.2d 864 (3rd Cir.1944); *Howard Johnson, Inc. v. Tucker,* 157 F.2d 959 (5th Cir.1946). Recoupments, unlike setoffs, do not involve the concept of mutuality of obligations, and arise out of the same transaction rather than out of different transactions. *In re Yonkers, supra* at 432; *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (W.D.Tenn.1981); *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986); *Lukens v. Goit,* 430 P.2d 607 (S.Ct.Wy.1967).

The facts of this case more closely resemble recoupment than setoff. The claim of Cenex arises out of a single contract, the Operating Agreement, and a recurring transaction, the transfer of net funds from Cenex to Debtor. *See In re B & L Oil Co., supra* at 158, where court construed division order as a single contract.

Cenex's right to reimbursement for costs and taxes arose out of the Operating Agreement, a single contract. Thus, Cenex is seeking recoupment for costs and expenses owed.

Banks allege in their Memorandum in Opposition that the right of Cenex to deduct costs and taxes and the obligation of Debtor to pay its proportionate share of costs and taxes do not arise from the same transaction or subject matter. Banks argue that under the terms of the Operating Agreement, Cenex and Debtor were required to perform numerous tasks involving different transactions.

Banks argument is wholly without merit. Cenex's claim for setoff, or recoupment, in the Court's view arises from a single contract, the Operating Agreement, and from a single transaction, the payment of working interest funds to Debtor less costs and taxes prusuant to Paragraph 8 of the Operating Agreement. That Paragraph provides:

> Operator shall promptly pay and discharge all costs and expenses in the development and operation of the Unit Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares ...

The Banks would have this Court follow the reasoning of *Sterling National Bank and Trust Co. of New York v. Southwire Co.,* 713 F.2d 684 (11th Cir.1983). In *Southwire,* a bank which held a security interest in the inventory of a metal dealer, Metric International, Inc., under terms of a financing agreement with metal dealer brought suit against a metal refiner, Southwire, to recover the value of copper transferred by the dealer to Southwire in satisfaction of a preexisting debt. The Eleventh Circuit held that Southwire did not possess a right of setoff superior to the security interest in copper held by the bank under the terms of the financing agreement.

The facts of *Southwire* are distinguishable from those of the case *sub judice.* Although the transaction between the dealer and Southwire arose out of a single "tolling" or "conversion" contract, the facts show that the dealer delivered scrap each month to Southwire, and, in exchange, dealer could draw cathode or converted scrap from Southwire. When dealer asked Southwire to release cathode to dealer's customer Westinghouse Electric, Southwire refused because dealer had not paid $175,430.00 in tolling charges owed Southwire. To obtain release of cathode to Westinghouse, dealer transferred cathode to Southwire in payment of the tolling charges.

The facts in Southwire demonstrate a setoff arising from two distinct transactions. Dealer delivered scrap to Southwire in exchange for subsequent transfer of cathode from Southwire to dealer. As tolling charges mounted, dealer was forced to deliver its own cathode to Soutwire to satisfy the preexisting tolling charge debt.

*Southwire,* and the other cases cited by Banks in their memoranda of authority addressing the conflict between secured parties and parties asserting a right of setoff, are not directly on point.

 Cenex is entitled to recoupment of its costs and taxes for pre-petition billings.

 Even were we to assume *arguendo* that Cenex is asserting a traditional setoff claim rather than recoupment, The Banks have entered into the loan transaction with Debtor's parent Buttes Gas and Oil with notice of the working interest of Debtor and of the first lien upon such interest as provided by the Operating Agreement. Article III, Section 3.1 of the Deed of Trust provides:

> All parties producing, purchasing, or receiving or having in their possession any such Hydrocarbons or proceeds are authorized and directed to treat and regard Secured Party (Banks) as the party entitled in Debtor's place and stead to receive such hydrocarbons and proceeds; and said parties ... shall be under no obligation to see to the application by Secured Party of any such proceeds received by it.

Although Cenex did not file the Operating Agreement in the real property records of Bowman County, North Dakota, the Deed of Trust indicates that the Banks had notice of the working interest of Debtor and the Banks were to stand in Debtor's place and stead as the party entitled to receive such working interest. *See* e.g., *Hunt Trust Estate v. Kiker,* 269 N.W.2d 377 (N.D.1978) stating that failure of lessee to record lease does not render it void as to subsequent lessor where lessor was put on due inquiry and upon reasonable investigation could have determined the status of the lease.

Moreover, Banks were put on notice of Debtor's working interest and the operator's lien thereon by (1) the standard form Joint Operating Agreement employed by Debtor and Cenex entitled A.A.P.L. Form 610 Model Form Operating Agreement—1956, (2) possession of the real property by Cenex, and (3) the filing of the Affidavit of Production in the real property records of Bowman County, North Dakota. *Zimmer v. Bellon,* 153 N.W.2d 757 (N.D.1967); *West Concord Conservation Club v. Chilson,* 306 N.W.2d 893 (Minn.1981); *Aldridge v. North East Independent School District,* 428 S.W.2d 447 (Tex.Civ.App.—San Antonio 1968, writ ref'd).

Because the Banks had actual notice of Debtor's working interest and because the Banks' own Deed of Trust stated that Banks were to stand in Debtor's place and stead, the Banks' perfected security interest is not superior to Cenex's right to withhold funds for costs and expenses pursuant to the Operating Agreement. *In re Concrete Structures, Inc.,* 23 B.R. 605 (Bankr. E.D.Va.1982). At common law the Banks, as assignees of the contract rights of the debtor-assignor, stand in the shoes of the Debtor, and the Banks have no greater rights against Cenex than Debtor had. Restatement, Contracts Section 167(1) (1962); *Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292 (N.D.1979); *First National Bank, Bismark v. O'Callaghan,* 143 N.W.2d 104 (N.D.1966).

It is ORDERED that Cenex's Motion for Relief From Stay is granted; it is further

ORDERED that Cenex may offset $12,-518.68 for pre-petition costs and expenses due and owing from Debtor against pre-petition revenues that Cenex owes to Debtor under the terms of the Operating Agreement.