In re David F. EHRHART and Virginia Ehrhart, Debtor.

Kenneth A. NATHAN, Trustee, Plaintiff,

v.

Sharon L. EHRHART, Defendant.

Bankruptcy No. 91–20755.
Adv. No. 91–2076.

United States Bankruptcy Court,
E.D. Michigan, S.D., Flint.

June 17, 1993.

Karen E. Evangelista, Detroit, MI, for plaintiff.

Raymond C. June, Flint, MI, for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION

ARTHUR J. SPECTOR, Bankruptcy Judge.

This case presents a difficult question of Michigan domestic relations law, namely: whether a custodial parent may offset a debt owed to the noncustodial parent against a child-support debt owed by the noncustodial parent. That the question arises in this court demonstrates that the practice of bankruptcy law is not quite as limited a specialty as some presume.

David F. Ehrhart (the "Debtor") and Sharon L. Ehrhart (the "Defendant") were divorced in 1981 pursuant to a stipulated judgment of divorce entered in Genesee County Circuit Court. The judgment required the Defendant to execute a note in favor of the Debtor in the amount of $10,-000, to be secured by a second mortgage on the former marital home, which was awarded to the Defendant. This note became due on June 30, 1991. The judgment also ordered "that the [Debtor] shall pay to the Defendant, weekly in advance, through the office of the Friend of the Court for Genesee County, Michigan, for the support and maintenance of the [couple's] minor child, the sum of Sixty-two Dollars ($62.00) and such payment shall commence upon entry of the Judgment of Divorce and shall continue until the minor child of the parties shall reach the age of eighteen (18), graduate from high school, or under exceptional circumstances, until the further order of the Court." Divorce Judgment at p. 4.

■ On May 30, 1991, the Debtor and his current spouse filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The trustee commenced this action on November 14, 1991, seeking payment of the $10,-000 note, plus interest, pursuant to 11 U.S.C. § 542(b). That section provides in pertinent part that "an entity that owes a debt that is property of the estate ... shall pay such debt to ... the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

In her answer, the Defendant acknowledged liability on the note, but contended that she is entitled to a setoff of $23,238.50 for unpaid child support. Because this amount exceeds her indebtedness to the Debtor, the Defendant included in her answer a counterclaim asking for "a judgment holding the subject Second Mortgage on the property ... to be satisfied and discharged."

At trial, the Defendant proved that when the Debtor filed bankruptcy, he did in fact owe well over $10,000 in overdue child support. But the trustee took the position that, even though the support payments are to be made to the Defendant under the terms of the divorce judgment, the arrearage is owed to the child. That being the case, the trustee argued, the Defendant is not entitled to setoff because the debts are not mutual. For the reasons which follow, judgment will be entered in favor of the Defendant.

There is authority for the proposition that the custodial parent assumes a role analogous to that of a trustee vis-a-vis child-support payments. *See Landry v. Roebuck,* 193 Mich.App. 431, 433, 484 N.W.2d 402 (1992) (referring to the "public policy considerations that guide the courts in preserving child support payments in trust for the child beneficiaries"); *Galla-*

*gher v. Department of Social Servs.*, 24 Mich.App. 558, 567, 180 N.W.2d 477 (1970) (referring to the custodial parent's "fiduciary responsibility in expending the [support] funds"). As a corollary to this proposition, a few cases suggest that the custodial parent acquires a beneficial interest in any child-support arrears, based on the premise that the payer's default obligated the custodial parent to draw from other financial sources to provide for the child's needs. *See Renn v. Renn*, 318 Mich. 230, 236, 27 N.W.2d 618 (1947) ("These payments on the arrears properly belong to plaintiff inasmuch as defendant's default in respect thereto necessitated plaintiff's paying the cost of the child's maintenance out of her own income."); *Wasson v. Wasson*, 52 Mich.App. 91, 96, 216 N.W.2d 594 (1974) (noting that the custodial parent "had to expend her own money to maintain her children, without receiving the requested assistance from her [former] husband").

Assuming the foregoing cases accurately reflect the law in Michigan, it remains unclear whether there is a conclusive or rebuttable presumption that the custodial parent compensated for the missed child-support payments, or if she faces the daunting burden of proving that fact. In any event, the Defendant gamely argued that she personally compensated for the Debtor's default, the trustee argued that she did not, and both parties presented proofs on the issue at trial. I will not decide this question, however, because the Defendant must prevail in this case even if she does not have a beneficial interest in the arrears.

Pursuant to § 31 of the Support and Visitation Enforcement Act, Mich.Comp. Laws § 552.601 *et seq.*, the custodial parent is explicitly permitted to "commence a civil

contempt proceeding by filing in the circuit court a petition for an order to show cause why the delinquent [child-support] payer should not be held in contempt." Mich. Comp.Laws § 552.631.[1] And since the initiation of such proceedings can result in the noncustodial parent's incarceration pending payment of the support arrears, *see* Mich. Comp.Laws § 552.637, there is no doubt but that the Act vests the custodial parent with an "enforcement" right.[2]

Nor does the Support and Visitation Act provide the only means by which the custodial parent can enforce a child-support obligation. Under Mich.Comp.Laws § 552.151, "the court may punish by fine or imprisonment, or both, any neglect or violation of the [child-support] order upon petition of the party whose rights may have been impaired, impeded, or prejudiced by neglect or violation."[3] Such a petition can be filed by the custodial parent. *See Ovaitt v. Ovaitt*, 43 Mich.App. 628, 639, 204 N.W.2d 753 (1972).

It bears emphasizing that the foregoing statutes do not limit the custodial parent's right of enforcement to situations in which she has acquired a beneficial interest in support arrears. Nor did the trustee cite any case holding to that effect. It is true that some courts have gone so far as to assert that the custodial parent "has no property right in child support payments." *Gallagher*, 24 Mich.App. at 568, 180 N.W.2d 477. *See also Copeland v. Copeland*, 109 Mich.App. 683, 685, 311 N.W.2d 452 (1981) ("Child support payments are not considered the property of the custodial parent and are solely for the benefit of the child."). But in light of the statutes cited, and consistent with the view that the custodial parent is a quasi trustee with respect

---

**1.** Section 31 refers to the "recipient of support," a term which the Act defines as meaning "[t]he custodial parent or guardian, if the support order orders support for a minor child or a child who is 18 years of age or older." Mich.Comp. Laws § 552.602(i)(ii).

**2.** Even when an enforcement action is brought by the office of the friend of the court, as § 552.631 permits, the office proceeds on behalf of the custodial parent, not the child. *See, e.g., Alpena Friend of the Court ex rel. Paul v. Du-*

*recki*, 195 Mich.App. 635, 491 N.W.2d 864 (1992).

**3.** The Support and Visitation Act states that the enforcement remedies created in the Act are not exclusive, *see* Mich.Comp.Laws § 552.603(9), and explicitly refers to Mich.Comp.Laws § 552.-151 as an alternative enforcement action available to the circuit court. *See* Mich.Comp.Laws § 552.627(b).

to child-support payments, these cases presumably meant only that the parent has no *beneficial* interest in the support payments.[4] As a sort of trustee, the custodial parent has at least a legal interest in the payments which gives her standing to bring an enforcement action against the delinquent child-support obligor. *Cf.* 76 Am.Jur.2d, *Trusts* § 276 ("A trustee is vested with a legal, as distinguished from an equitable, estate, which legal estate equity recognizes but compels to be used by the trustee ... for the benefit of all beneficiaries....." (footnotes omitted)). So while it may be true that the Debtor's child-support obligation is not owed to the Defendant in her individual capacity, it is certainly "owed" to her in her "fiduciary" capacity for the child.

This is still problematic from the Defendant's standpoint because she is indebted to the Debtor in her individual capacity, and debts generally cannot be offset unless they are "mutual" debts—i.e., involve the same parties acting *in the same capacity* in connection with both obligations. *See, e.g., In re Ross–Viking Merchandise Corp.*, 151 B.R. 71, 73–74 (Bankr.S.D.N.Y. 1993); *In re Revco D.S.*, 111 B.R. 631, 639 (Bankr.N.D. Ohio 1990) (citing 4 *Collier on Bankruptcy*, ¶ 553.04 at 553–21,22 (15th ed. 1989)). But since the obligations at issue here arise from a single, stipulated divorce judgment, the Defendant's setoff theory is more accurately characterized as one of recoupment. *See Flynn v. Barry*, 221 Mich. 422, 423–24, 191 N.W. 215 (1922); 20 Am.Jur.2d, *Counterclaim, Recoupment and Setoff* § 6. And most courts regard the concept of mutuality as irrelevant to the doctrine of recoupment. *See, e.g., In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990); *In re Kaiser Steel Corp.*, 110 B.R. 20, 26 (D.Colo.1990); *In re Midwest Serv. & Supply Co.*, 44 B.R. 262, 266 (D.Utah 1983); *In re Yonkers Hamilton Sanitarium*, 34 B.R. 385, 386 (S.D.N.Y.1983);

*Waldschmidt v. CBS*, 14 B.R. 309, 314 (M.D.Tenn.1981); *In re Prudential Lines*, 148 B.R. 730, 751 (Bankr.S.D.N.Y.1992); *In re Ruiz*, 146 B.R. 877, 880, 27 C.B.C.2d 1457 (Bankr.S.D.Fla.1992); *In re Vaughter*, 109 B.R. 229, 232, 20 B.C.D. 109 (Bankr. W.D.Tex.1989); *In re Hiler*, 99 B.R. 238, 241 (Bankr.D.N.J.1989); *In re Heafitz*, 85 B.R. 274, 278 (Bankr.S.D.N.Y.1988); *Gold Leaf Corp. v. Hamilton Projects*, 78 B.R. 1018, 1022, 16 B.C.D. 892 (Bankr.N.D.Fla. 1987); *In re Buttes Gas and Oil*, 72 B.R. 236, 238 (Bankr.S.D.Tex.1987); *In re McCoy*, 65 B.R. 673, 674 (Bankr.C.D.Ill. 1986); *In re Alpco, Inc.*, 62 B.R. 184, 188 (Bankr.S.D.Ohio 1986). *Contra In re The Julien Co.*, 141 B.R. 359, 375, 382 (Bankr. W.D.Tenn.1992).

Regardless of whether mutuality is a prerequisite to recoupment, however, other considerations pose a problem for the Defendant. Under Michigan law, a child-support obligation is not assignable. *See Welles v. Brown*, 226 Mich. 657, 658–59, 198 N.W. 180 (1924). And as noted in *Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir.1970), "[i]t is a well established rule of law that a fiduciary cannot use his position to benefit himself in his individual capacity." *Id.* at 86 (collecting Michigan cases and other authorities). Permitting the Defendant to satisfy her personal liability on the note by means of a *pro tanto* reduction in the Debtor's child-support obligation would arguably be contrary to the spirit of the anti-assignment rule, because it would in effect permit the Defendant to sell a portion of her legal interest in the obligation for a valuable consideration—namely, cancellation of the note and mortgage.

One could also argue that allowing recoupment is contrary to the principle that precludes a fiduciary from using her position for personal gain. Satisfaction of the note and discharge of the underlying mort-

---

**4.** In *Gallagher,* the issue before the court was "whether child support arrearage payments are the property of the mother for the purpose of determining eligibility of [sic] aid to the disabled." 24 Mich.App. at 559, 180 N.W.2d 477. In *Copeland,* the issue was "whether [the custodial parent's] decision to quit her job and return to school constitute[d] a change of circumstances justifying an increase in defendant's child support obligation." 109 Mich.App. at 685, 311 N.W.2d 452. Neither court addressed the narrow question of whether the custodial parent has the right to enforce a child-support obligation.

gage inures to the benefit of the Defendant in her individual capacity, and comes at the expense of the couple's child by liquidating an asset in which, at least in theory, only the child has a beneficial interest. *But see Fuqua v. Fuqua*, 88 Wash.2d 100, 108 n. 4, 558 P.2d 801 (1977) (Use of "[t]he trust approach [in determining whether the custodial parent's attorney can assert a valid lien on child-support arrearages] is complicated by the well-established doctrine that the interest of a beneficiary in a trust for support is reachable by a creditor for 'necessaries.' *See* Restatement (Second) of Trusts § 157(b) (1959).").

I need not resolve these difficult questions, however. Whether the Defendant has a right to recoup the trustee's claim is determined by nonbankruptcy law—in this case, the law of Michigan. *See In re De Laurentiis Entertainment Group*, 963 F.2d 1269, 1277 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992); *Prudential Lines*, 148 B.R. at 751. In applying state law, I am bound by the most recent holding of the Michigan Supreme Court involving the issue before me. *See Olsen v. McFaul*, 843 F.2d 918, 928 (6th Cir.1988). Although the parties did not direct my attention to any such case, the Defendant did cite a Court of Appeals decision that is very relevant here.

In *Kalter v. Kalter*, 155 Mich.App. 99, 399 N.W.2d 455 (1986), *appeal denied*, 428 Mich. 862 (1987), Mrs. Kalter obtained an order retroactively increasing Mr. Kalter's child-support obligation under a judgment of divorce. As a result of this modification, an arrearage of $2,377.20 was created. 155 Mich.App. at 101, 399 N.W.2d 455. Mr. Kalter argued that he was entitled to a setoff of $2,000 against the arrearage, because Mrs. Kalter owed him that amount pursuant to the terms of the property division contained in the divorce judgment. *Id.* at 100–03, 399 N.W.2d 455. The trial court allowed the setoff, *id.* at 103, 399 N.W.2d 455, and the Court of Appeals affirmed, *id.* at 106; 399 N.W.2d 455.

The same issues discussed in this case were likewise present in *Kalter*. By allowing Mr. Kalter a setoff, Mrs. Kalter in effect received a personal benefit—discharge of the $2,000 indebtedness—through the reduction of an obligation which, as the *Kalter* court explicitly acknowledged, is "not property of the custodial parent, and [is] for the sole benefit of the child." *Id.* at 102, 399 N.W.2d 455 (quoting the trial court, which in turn cited *Copeland, supra* p. 460). Yet the court made no effort to distinguish Mrs. Kalter's "individual" and "fiduciary" capacities. Nor did it intimate that the arrearage was designed to reimburse Mrs. Kalter for her out-of-pocket expenditures.[5] *See supra* pp. 459–60.

In contrast to this case, it was the noncustodial parent—Mr. Kalter—who asserted a right of setoff against a debt owed to the custodial parent. But I see no reason to suppose that the court might have been troubled by the trust-like nature of the support funds if it had instead been Mrs. Kalter who requested a setoff against her liability to Mr. Kalter. Thus the fact that *Kalter* was in a sense the flip side of this case is not significant.

*Kalter* also differs from this case in that the arrearage was created by a retroactive increase in child support, rather than because of the noncustodial parent's failure to keep current on a court-ordered support obligation. This distinction was perceived as an issue in *Landry, supra* p. 459, where "[t]he principal question presented ... concern[ed] the validity of an attorney's retaining lien on the proceeds of a certified check payable to a client. The $1,500 check at issue resulted from the attorneys' obtaining a consent order [providing] for [an increase in] child support, which was entered

---

5. In fact, the court's account of the trial-court proceedings tends to negate such an inference. *See Kalter*, 155 Mich.App. at 102 n. 4, 399 N.W.2d 455. (noting that Mrs. Kalter testified that the support increase was needed because she could not take the child "on skiing trips ... [and] things like this"); *see also id.* at 106, 399 N.W.2d 455. (quoting testimony from Mr. Kalter to the effect that he would be willing to increase his level of support "should there be private schooling" for the child or "for summer camp if [Mrs. Kalter] decided [that the child] should attend").

on March 14, 1989, and was retroactive to January 1, 1988." *Landry,* 193 Mich.App. at 432, 484 N.W.2d 402. Because the question was "one of first impression in Michigan," the court referred to *Fuqua, supra* p. 462, describing it as "[t]he seminal case in this regard." *Landry,* 193 Mich.App. at 433, 484 N.W.2d 402.

In *Fuqua,* the Supreme Court of Washington addressed the validity of an attorney's lien on child support arrearages asserted in two separate cases. In one case, the arrearage was attributable to the payer's delinquency. *See Fuqua,* 88 Wash.2d at 101–02, 108–09, 558 P.2d 801. The other case involved a "judgment for $2,000 past support" entered in a paternity action successfully litigated by the attorney. *See id.* at 102, 558 P.2d 801.

Following what it characterized as the "majority" view, *id.* at 106, 558 P.2d 801, the court ruled that both liens were unenforceable. *Id.* at 107–08, 558 P.2d 801. It reasoned as follows:

> [T]o allow an attorney's lien to be asserted against child support would necessarily result in counsel for the custodian taking from the children involved, monies which the court has determined to be necessary to assure their adequate support. It is impractical to assume that the trial court can consider possible liability for attorney's fees in ascertaining a support figure.... If the assertion of liens such as these became commonplace, the court's function in providing for the adequate support of minor children, the innocent parties to these actions, would be wholly frustrated. "Equity, which creates the fund, will not suffer its purpose to be nullified." *Turner v. Woolworth,* 221 N.Y. 425, 430, 117 N.E. 814 (1917). We therefore hold that, as a matter of public policy, statutory attorney's liens may not be asserted against monies which represent payments for child support.

*Id.* 88 Wash.2d at 107, 558 P.2d 801.

Although the court in *Landry* described *Fuqua* as "well grounded and based on sound public policy considerations," it purported to "distinguish its holding and ratio-

nale from the case at bar." *Landry,* 193 Mich.App. at 434, 484 N.W.2d 402. Specifically, the court cited the following grounds for concluding that the attorney lien at issue was valid:

> The *Fuqua* court held that permitting attorneys' liens to be asserted against child support "would necessarily result in counsel for the custodian taking from the children involved, monies which the court had determined to be necessary to assure their adequate support." ... We do not think that analysis carries over to the obtaining of an increase in child support payments which, because of retroactivity, creates a lump sum due the custodian on behalf of the child. *Fuqua* applied to a charging lien. The attorneys at bar seek enforcement of a retaining lien. The dissent fails to make the distinction between arrearages created by virtue of failure to pay court-ordered requirements, i.e., back support, vis-a-vis a retroactive increase.
>
> There is no doubt that the purpose of child support is to insure that the child's immediate needs are cared for on a continuing basis. The $1,500 payment [for support arrearages] in question here could not be applied to immediate needs. The lump sum was the result of an increase from $35 to $140 a week. The $1,500 check was partial payment of the arrearage. The lump sum did not become payable and was not paid until adequate present and future payments were ordered and in force and effect. We are not persuaded that the attachment of an attorney's lien to a check representing retroactively increased child support arrearages undermines Michigan's policy regarding the support of minor children.... To the contrary, such a ruling would tend to inhibit litigation on behalf of such minors and their custodians who seek to increase child support orders already in force but thought to be inadequate.

*Id.*

Thus the result in *Landry* was apparently based in part on the court's conclusion that a "retroactive" child-support arrear-

age—i.e., one created by a retroactive court order—does not raise the same public policy concerns as does an arrearage created by the payer's default of an existing court order. Since *Fuqua* involved both kinds of arrearages and did not differentiate them, *Landry* was mistaken insofar as it meant to suggest that the cases were distinguishable in that respect.

More to the point, I believe the distinction *Landry* drew is unpersuasive. That court reasoned that the support arrearage "could not be applied to [the child's] immediate needs." *Id.* The urgency of the child's need for the support funds in dispute is arguably a legitimate consideration in determining whether an attorney's lien on the funds should be enforced. However, *Landry* failed to identify, nor do I see, why there would necessarily be a less "immediate" need for arrearages owed as a result of a retroactive increase in child support than would be the case if the arrearage was attributable to the payer's default under an existing support order.[6] I therefore conclude that, *Landry* notwithstanding, the fact that *Kalter* involved a retroactive arrearage is of no moment for purposes of considering *Kalter*'s relevance to this case.[7]

Because no significant factual distinction can be made between the cases, *Kalter* is controlling here unless I am "convinced that the highest state court would decide [the issue] differently." *Olsen*, 843 F.2d at 929 (quoting *Dale Baker Oldsmobile v. Fiat Motors of North America*, 794 F.2d 213, 218 (6th Cir.1986)). And while the trustee's position in this case has merit, there is ample reason to believe that the Michigan Supreme Court would not disturb

*Kalter.* For one thing, the recent Court of Appeals decision in *Landry* suggests that Michigan courts are not necessarily inclined to carry the trust analogy to its logical limits in cases involving the "ownership" of child-support funds.

More importantly, there appears to be strong statutory support for the court's decision in *Kalter.* In entering a judgment of divorce, "the court shall order support in an amount determined by application of the child support formula developed by the state friend of the court bureau." Mich. Comp.Laws § 552.16(2). But the court may "deviate[ ] from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following: ... (c) The value of property or other support awarded in lieu of the payment of child support...." *Id. See also* Mich.Comp.Laws § 552.17(2) (containing the same language as excerpted from Mich.Comp.Laws § 552.16(2), and pertaining to the modification of child support).

Thus Mich.Comp.Laws §§ 552.16(2) and 552.17(2) implicitly permit the court to adjust the noncustodial parent's child-support obligation in recognition of concessions made by (or imposed upon) that parent with regard to the division of property. *Cf. In re Smith*, 131 B.R. 959, 967, n. 13 (Bankr. E.D.Mich.1991) (noting the interdependent nature of the relationship between support and property division as evidenced by Mich. Comp.Laws § 552.23). Since such an adjustment is in essence a setoff, the result in *Kalter* seems entirely unobjectionable.

■ Based on the foregoing considerations, I am not "convinced" that the Michi-

---

**6.** *Landry* is somewhat elusive because its reasoning would seem to apply to support arrearages *in general*, whether "retroactive" or "delinquent" in origin. This ambiguity may explain why Judge Sullivan ignored the delinquency/retroactivity distinction in his dissenting opinion. *See Landry*, 193 Mich.App. at 435–36, 484 N.W.2d 402.

**7.** There is an oblique indication in *Kalter* that the court might have been more reluctant to allow Mr. Kalter to exercise a setoff if the arrearage were attributable to his noncompliance with the terms of an existing support order.

*See Kalter*, 155 Mich.App. at 106, 399 N.W.2d 455 ("[I]t was equitable to credit the retroactively-created arrearage the defendant suddenly owed to plaintiff with the $2,000 she already owed to him. The trial judge was not required to make the increased [support] order retroactive ..., and the judge could properly apply such a debt to it in equity."). But since in this case it is the custodial parent who is requesting the setoff, the fact that the support arrearage resulted from the Debtor's default only serves to strengthen the Defendant's "equitable" position.

gan Supreme Court would reach a decision contrary to *Kalter.* That case is therefore binding here, and I accordingly hold that the Debtor's right of payment—and hence the trustee's right of payment—is subject to recoupment. *See, e.g., In re A & B Homes,* 98 B.R. 243, 246, 19 B.C.D. 26 (Bankr.E.D.Va.1989) ("The general rule is that '[t]he trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition.'" (quoting *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966))). Since the trustee's demand is less than the amount owed by the Debtor to the Defendant, the latter's liability under the note is fully satisfied. The mortgage securing the note must therefore be discharged. *See Ginsberg v. Capitol City Wrecking Co.,* 300 Mich. 712, 717, 2 N.W.2d 892 (1942) ("[P]ayment, release, or anything which extinguishes the debt, extinguishes the [underlying] mortgage."). An appropriate order shall enter.