STATE OF MICHIGAN
COURT OF APPEALS

FRANCIS JOSEPH HINSBERG,

      Plaintiff-Appellee,

v

MARIA HINSBERG,

      Defendant-Appellant.

UNPUBLISHED
October 27, 2015

Nos. 324046; 325807
Genesee Circuit Court Family
      Division
LC No. 07-275950-DM

---

FRANCIS JOSEPH HINSBERG,

      Plaintiff-Appellee/Cross-Appellant,

v

MARIA HINSBERG,

      Defendant-Appellant/Cross-
      Appellee.

No. 324455
Genesee Circuit Court Family
      Division
LC No. 07-275950-DM

---

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

In these consolidated appeals, defendant appeals as of right the trial court's orders granting plaintiff's request for a change of domicile, changing physical custody and parenting time of the parties' minor children, and denying her request for attorney fees. Plaintiff cross-appeals to the extent the trial court did not also alter his child support obligation. We affirm in part, vacate in part, and remand for further proceedings.

The parties were married on July 26, 1986. Their divorce was finalized on January 30, 2009. When this litigation commenced, five of the parties' six children were minors. Currently,

-1-

only Martha and Anna are still minors.[1] Prior to the commencement of the instant proceedings, and in accordance with the judgement of divorce, the parties shared joint legal and physical custody of the minor children with the equal sharing of parenting time. Defendant previously appealed the judgment of divorce itself. *Hinsberg v Hinsberg*, unpublished opinion per curiam of the Court of Appeals, issued August 10, 2010 (Docket No. 290481). Plaintiff is a physician; defendant does not work and faces significant medical issues. The instant proceedings arise out of plaintiff's motion seeking a change of domicile and modification of parenting time pursuant to his desire to move from Flushing, Michigan to Richmond, Kentucky.

## I. CHANGE OF DOMICILE, CUSTODY, AND PARENTING TIME

Defendant challenges the entirety of the trial court's rulings pertaining to the grant of plaintiff's motion for change of domicile and the ensuing alterations in custody and parenting time as being contrary to the best interests of the children. As explained by this Court in *Brausch v Brausch*, 283 Mich App 339, 347-348; 770 NW2d 77 (2009) (citations omitted):

> Pursuant to MCL 722.28, "[t]his Court must affirm all custody orders unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless they clearly preponderate in the opposite direction. In a child custody context, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." Clear legal error occurs "[w]hen a court incorrectly chooses, interprets, or applies the law." Additionally, we review de novo a trial court's resolution of issues of law, including the interpretation of statutes and court rules . . . In interpreting a statute or court rule, we accord every word or phrase of a statute or court rule its plain and ordinary meaning.

### A. Domicile

When deciding a motion for a change of domicile,

> [f]irst, a trial court must utilize a preponderance of the evidence standard when determining whether the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile will modify or alter the child's established custodial environment must the trial court determine whether the change in

---

[1] Martha will be less than 3 months from her 18th birthday when the instant appeal is resolved.

domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).]

"It is only *after* the trial court determines that the moving party has shown by a preponderance of the evidence that a change of domicile is warranted that [a] court must determine whether an established custodial environment exists." *Id.* at 327 (citation omitted, emphasis in original).

"When the parents share joint custody and one parent is seeking permission to relocate more than 100 miles away, the family court must consider the factors of MCL 722.31(4)." *Spires v Bergman*, 276 Mich App 432, 436-437; 741 NW2d 523 (2007). The factors delineated in MCL 722.31(4) include:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"The party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted." *McKimmy v Melling*, 291 Mich App 577, 582; 805 NW2d 615 (2011).

The trial court appropriately began its analysis and findings in accordance with the factors listed in MCL 722.31(4). Initially, neither party alleged, nor was there evidence adduced to suggest, the existence of domestic violence in the circumstances of this case or that defendant's opposition to the change of domicile was motivated by financial concerns. See MCL 722.31(4). Therefore, the focus of the trial court's analysis addressed MCL 722.31(4)(a) regarding the capacity of the move to improve the lives of the children and plaintiff, (b) the exercise of parenting time afforded to each party and the reasons motivating plaintiff's desire to change the children's domicile, and (c) how parenting time would be modified following a

domicile change and the opportunity to maintain the children's relationship with the non-custodial parent in conjunction with the willingness of the custodial parent to facilitate that ongoing relationship.

In accordance with MCL 722.31(4), the trial court received evidence and testimony regarding the potential for the proposed domicile change to positively affect the quality of life of plaintiff and the minor children. While there was some contention regarding plaintiff's alleged income increase, it was shown that his base salary in Kentucky would be higher. In addition, plaintiff's residence in Kentucky would permit him to remain with his current wife. This would likely lessen his financial obligations and time in the maintenance of households in two states, which could potentially improve his marriage and family situation as a whole. Plaintiff averred that in the past he has worked the amount necessary to produce an income sufficient to pay his financial obligations. However, if those obligations were lessened, he would use his extra time to parent the children rather than to pursue additional income, which would not be as necessary. Plaintiff's increased presence in the lives of the children, based on previous examples, has the potential to significantly improve their academic performance and reduce the everyday stresses being encountered in their current environment.

There was no dispute that the lives of the children in Michigan were chaotic and troublesome. Martha, in particular, was experiencing severe stress and behavioral difficulties. She was not properly attending school, was at risk of being unable to graduate, and was routinely failing courses despite an acknowledged ability to perform better academically. Also, she was frequently at odds with defendant, which led to Martha yelling and leaving defendant's home for periods of time. Even the defendant and defendant's family acknowledged that defendant was incapable of controlling Martha's behavior. Equally as troubling was the implicit manipulative behavior of defendant in threatening self-harm when confronted by the children's stated preference to live with plaintiff.

Conversely, testimony and evidence demonstrated that Martha's behavior and school performance were improved when with plaintiff due to his stricter parenting and focus on problem solving. Notably, two of the school professionals involved routinely with Martha, Martha T. Barta and Kellen Lester, supported the change of domicile and opined that it was in Martha's best interests to reside with plaintiff because of his parenting strengths. Evidence was also adduced that the children expressed a strong preference to reside with plaintiff. While not the sole factor to be considered, the children indicated legitimate reasons for their preference to live with plaintiff, including the existence of acknowledged social difficulties being experienced in school and pressures exerted by defendant's family.

Defendant's home was stressful with the children thrust into the role of defendant's caregiver due to her seizure history. While defendant cannot be faulted for her medical condition, the responsibility that befell to the children for her care and assistance was exacerbating the stress they were already experiencing in that environment. There was also evidence regarding the problematic communication between plaintiff and defendant. Although plaintiff responded when defendant requested his assistance, did not contradict defendant in the presence of the children or demean her, and kept her informed of incidents or problems that arose during his parenting time, defendant did not behave in a reciprocal manner. Defendant made negative comments to the children regarding plaintiff and his wife to the extent the

children requested her to cease the behavior. Defendant acknowledged electing not to communicate with plaintiff by ignoring his emails and not informing him of incidents involving the children during her parenting time, inherently dismissing the importance of the exchange of information in order to provide the children with consistency and continuity.

Although the difficulties being faced by Martha far exceeded those experienced by Annie, it was clearly demonstrated that both children were struggling in the current circumstances. Plaintiff evidenced an approach to the situation that suggested a plan to deal with the demonstrated issues, while defendant merely indicated a lack of ideas regarding how to improve or, at the very least, ameliorate the current situation and problems. While the children would be leaving a few friends behind in Michigan, this did not appear to negatively affect their preference to reside in Kentucky with plaintiff. Any suggested impact with regard to removing the children from proximity to defendant's family was disingenuous. First, it was acknowledged that members of defendant's family were not overly involved in the children's lives on a routine basis. Second, defendant's family primarily interacted with the children during the summer and holidays, which would still be available and thus would not significantly alter their access or interactions. Third, a legitimate concern existed that defendant's family was already beginning to ostracize Martha. This concern was based on the family's prior behavior towards the parties' eldest child, Sarah Hinsberg, in which the family purposefully reduced contact with her due to her stated preferences in the previous divorce proceedings. Hence, sufficient evidence was adduced to satisfy plaintiff's burden under MCL 722.31(4)(a).

In evaluating MCL 722.31(4)(b), it was noted that plaintiff and defendant both utilized their parenting time under the existing court order. Of particular note were plaintiff's efforts to maintain his parenting schedule despite his work obligations and travel necessitated by his move to Kentucky. There was no suggestion that plaintiff's request for a domicile change was motivated by an effort to frustrate defendant's parenting time and, as represented, was simply a sincere attempt to improve the situation for the minor children. Similarly, the trial court recognized the balance it would need to achieve, regarding the requirements of MCL 722.31(4)(c), in developing a parenting time schedule that would continue to maximize the children's relationship with defendant. The trial court was able to achieve a balance that would meet the needs of the minor children, while sustaining their relationship with defendant. Defendant was to receive the majority of the summer months with the children, half the Christmas holidays, the entirety of their spring breaks from school, unfettered access by telephone and social media, and the opportunity to have additional time with the children in Kentucky upon the provision of notice. The proposed schedule recognized the children's need for consistency and continuity during the school year by allowing plaintiff to oversee and structure their academic experience, while still affording defendant significant blocks of time with the minor children.

In effectuating this balance, the trial court also implicitly addressed the strengths of each parent in interacting with the children; plaintiff would have the responsibility of dealing with the stress inherent in assuring the children's academic participation, attendance, and performance; while defendant's time with the children would not place external burdens or stressors on her interactions with the children. In addition, there was no indication of plaintiff ever being unsupportive of defendant or interfering in her relationship with the minor children as evidenced by his voluntary offer to assume the financial burden for their transportation to Michigan for

defendant's parenting time. As such, the trial court properly addressed the relevant provisions of MCL 722.31(4) and, consistent with the evidence, demonstrated that plaintiff had met his burden in seeking a change of domicile for the children.

Defendant contends that the trial court incorrectly considered the children as an indivisible entity and failed to consider the individualized needs and situations of each child. This is inaccurate and a mischaracterization of the trial court's ruling and analysis. It is true to suggest that a large portion of the trial court's references focused on Martha given the immediacy and propensity of the difficulties being experienced and the inherent risks posed. Yet, the trial court did address Annie as an individual recognizing some current concerns and anticipated future issues. In particular, there was undisputed evidence that Annie experienced some stress in assuming a caregiver's role due to defendant's seizure condition and was beginning to evidence panic attacks when having interactions with defendant. Also, the trial court expressed legitimate concern about her future school attendance and performance based on the histories of her siblings and potential for future issues to arise. Additionally, given the stated and unequivocal preferences of each child, coupled with the undisputed testimony of the siblings close relationship, the trial court changed the domicile of both children. Contrary to defendant's assertion, this did not simply treat the children as one entity. Instead, it showed consideration for their individual needs by recognizing the importance and depth of their relationship.

In addition, defendant's contention that plaintiff violated MCL 722.31(1) is without support in the record and is an incorrect reading of the statutory provision. MCL 722.31(1) provides:

> A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order *shall not change a legal residence of the child* to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued. [Emphasis added.]

Although evidence demonstrated that plaintiff moved to Kentucky before the evidentiary hearing in this matter, his move did not alter the legal residence of the children in violation of the statute. The children's legal residences remained in Michigan, with plaintiff exercising his parenting time in this state. Contrary to defendant's assertion, MCL 722.31(1) does not preclude a parent from changing their residence without the trial court's permission. As such, defendant's arguments suggesting plaintiff violated this statutory provision are without merit.

B. Established Custodial Environment

Having determined that plaintiff met his burden under MCL 722.31(4), the trial court was next required to determine "whether an established custodial environment exists." *Rains*, 301 Mich App at 325. In accordance with MCL 722.27(1)(c):

> [T]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the

physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Although the trial court did not explicitly state a separate determination regarding the existence of an established custodial environment, its ruling implicitly indicated a finding of the existence of a joint custodial environment. Specifically, the trial court recognized that the proposed change of domicile would alter the current situation "from a true joint custodial environment to a joint custodial environment with primary physical custody to Plaintiff for purposes of school." The trial court further acknowledged having found the existence of an established joint custodial environment by indicating that plaintiff's burden of proof pertaining to the best interests of the children was that of "clear and convincing" evidence.

As recognized in *Pierron v Pierron*, 282 Mich App 222, 245; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010):

If the circuit court finds that an established custodial environment exists, then the circuit court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. This higher clear and convincing evidence standard also applies when there is an established custodial environment with both parents. [Citations and quotation marks omitted.]

Therefore, based on these statements and its continuation to evaluate the best interest factors of MCL 722.23, the trial court determined the existence of a joint custodial environment. Hence, the only problem is with the apparent sequence of the Court's findings, having referenced the custodial environment determination after elucidating its findings on the best interest factors. Because the trial court did, however, evaluate all of the necessary components for the determination of a change of domicile, any discrepancy in the order or consideration is irrelevant. Commensurate with this determination, the trial court also found that the change of domicile would alter or change the custodial environment.

C. Best Interest Factors

Defendant also challenges the trial court's best interests analysis and its conclusion that the change of domicile was in the best interests of the minor children. The factors identified for evaluating the best interests of the children are delineated in MCL 722.23. The trial court determined the parties to be equal on factors (a), (e), and (f), with plaintiff favored on factors (b), (c), (d), (g), (h), (i), and (j). Factors (k) and (l) were deemed inapplicable. Specifically, defendant challenges the trial court's findings on factors (b), (c), (d), (f), (g), (h), (i), (j), and (l) as being against the great weight of the evidence. The trial court's evidence and findings on each factor are addressed individually.

Factor (b) pertains to "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court noted that at the time of the divorce proceedings plaintiff was favored on this factor and that plaintiff was again favored, now

-7-

"more heavily," on this factor. In support of its determination, the trial court noted defendant's problems, historically, in parenting the children as they matured. Specifically, the trial court referred to the problems that had arisen between defendant and Sarah during the prior divorce proceedings and used this prior experience as a reason to express concern for defendant's "future relationships with the minor children as they age." While the trial court implicitly acknowledged that both parties were capable of providing the children with love and affection, it was clear that favoring plaintiff on this factor stemmed from his ability to provide structured guidance for the children to assure their educational performance and lessened stress. In support of this finding was evidence that Martha had an extremely strained relationship with defendant and that when in defendant's custody she was not attending school and overall doing poorly. Even defendant's family recognized that defendant could not control Martha's behavior.

In contrast, Martha expressed a preference for the more structured environment provided by plaintiff and his involvement in her school resulted in observable benefits regarding her attendance and performance. Notably, two school professionals opined that Martha would be benefited by changing her domicile to plaintiff's home. The trial court gave particular weight to the testimony of the school personnel premised on their status as professionals, their unequivocal opinion regarding a preference for the custodial environment offered by plaintiff, and the objective nature of their opinions due to the absence of any familial relationship of these individuals to the parties. Given the acknowledged problems encountered regarding the children, particularly Martha, in defendant's home, the trial court did not err in favoring plaintiff on this factor.

MCL 722.23(c) deals with "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care . . ." "Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' capacity and disposition to provide for the children's material and medical needs. Thus, this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). The trial court recognized plaintiff's greater capacity, now and in the future, to have a sustainable income to support the minor children. Although defendant had demonstrated some improvement in her financial acumen, questions still remained regarding her independent ability to manage her finances. While not discussed by the trial court, contradictory testimony was elicited indicating defendant's occasional failure to maintain food in her home and that when encountering financial difficulties, such as back taxes, she still sought the assistance of plaintiff to intervene in her financial situation. Additionally, testimony implied that the children had responsibility for assisting defendant with her medical concerns, which was a particular stressor for Martha and Annie. As such, the trial court did not err in favoring plaintiff on this factor.

MCL 722.23(d) requires the trial court to consider "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." Although favoring plaintiff on this factor, the trial court opined that "[b]oth parties are upstanding people who are capable of generally providing stability." But noting the history of problems that arose in defendant's household, the trial court opined that her "inability to control teenage children" had been demonstrated to "negatively affect[] both girls emotionally." The trial court particularly referenced testimony indicating that the children would leave defendant's

home for overnight periods due to defendant's "dynamic with the girls [which] manifests in tumultuous conflicts." This factor, during the divorce proceedings, was evaluated with both parties being deemed equal. Although plaintiff has obviously physically altered his residence, all testimony suggested that his home, regardless of its physical location, is structured and non-chaotic. The trial court did not err in favoring plaintiff on factor (d).

MCL 722.23(f) encompasses the "moral fitness of the parties involved." Although the trial court deemed the parties equal on this factor, defendant contends she should have been favored. "[Q]uestionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function as a parent." *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). Morally questionable conduct pertinent to a parent's moral fitness includes, but is not limited to, "verbal abuse, drinking problems, driving record, physical or sexual abuse of children, and other illegal or offensive behaviors." *Id*. at 887 n 6. There was no evidence adduced to support defendant's contention of superiority on this factor. Testimony indicated that plaintiff was supportive of defendant. He instructed the children to respect and obey their mother and did not demean or speak negatively of her in their presence. There was no evidence of illegal conduct engaged in by either party nor any suggestion of questionable behavior. In contrast, defendant acknowledged that she had made numerous negative comments regarding plaintiff and his wife to the minor children, which led to them requesting her to cease this behavior. Furthermore, defendant had threatened to harm herself in the presence of the minor children on more than one occasion. Therefore, the trial court did not err in finding the parties equal on this factor.

In accordance with MCL 722.23(g), the trial court must evaluate the "mental and physical health of the parties involved." There was no evidence of any physical or mental health concerns pertaining to plaintiff. As noted by the trial court, defendant evidenced a prolonged history of grand mal seizures, which factored into her ability to parent the children. Because of her condition, defendant was unable to secure a driver's license and was reliant on others, including Martha, for transportation. Despite the positive testimony by defendant and other individuals regarding defendant's improved physical health, there was no evidence to support these allegations. In fact, the defendant acknowledged having a seizure one month before the domicile hearings. Specifically, the trial court found that defendant's "neurological deficits are a significant factor in her ability to effectively parent teenagers." The trial court noted that its observations were not intended to fault defendant for having the condition. They stated that she "is a wonderful person" but recognized that it was necessary for them to analyze "how her condition affects her parenting." The trial court did not err in its determination that defendant's medical condition did subject her to limitations with regard to her parenting. Although not mentioned by the trial court, testimony was elicited that, when stressed, defendant had made statements of an intention to do self-harm in the presence of the children. Such statements by defendant on more than one occasion suggest concerns regarding her mental health and ability to cope with stress, which would negatively impact the children. The trial court did not err in favoring plaintiff on this factor.

MCL 722.23(h) refers to the "home, school, and community record of the child." The trial court favored plaintiff on this factor noting that the children were experiencing difficulties in their current school situations, with Martha's situation being dire given her risk of failing courses and not graduating. Both children reported being subject to bullying in their current school

environments. Martha had substantial absences and tardies from school, almost exclusively while in defendant's custody. While Annie currently was not showing similar difficulties in her school performance, past experiences, specifically Martha's academic struggles, indicate a strong potential for a similar effect on Annie's future performance. In contrast, testimony and evidence indicated that the children were provided more structure when in plaintiff's care, which led to increased school attendance and an improvement in academic performance, particularly for Martha. Given the situation, the court found that "a fresh start is necessary for the children." Acknowledging that a change in schools would not necessarily guarantee a resolution to the problems being faced, the trial court found that "the proposed change will dramatically improve the children's home, school, and community record." This was bolstered by the testimony of school personnel who opined that plaintiff's greater involvement with the children would facilitate their academic performance. The trial court did not err in favoring plaintiff on this factor.

Factor (i) addresses "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). "One of the . . . factors a trial judge must consider in a custody dispute is the 'reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.'" *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991) (citation omitted). The trial court interviewed the children and indicated that their preference was to reside with plaintiff. The trial court noted that both children were emotional during their in camera interviews, with Martha displaying overt upset and emotion due to the handling of the interview transportation by defendant. The response of Martha led the trial court to be "very concerned about her emotional and psychological status" to an extent never previously experienced and prompted it to "schedule an immediate telephone conference with counsel to arrange for an expedited trial schedule."

It is recognized that "[t]he child's preference does not automatically outweigh the other factors, but is only one element evaluated to determine the best interests of the child." *Treutle v Treutle*, 197 Mich App 690, 694-695; 495 NW2d 836 (1992). However, due to the respective ages of the minor children, their stated preference in this case is subject to greater weight. It is important to note that defendant has implied that plaintiff has improperly influenced the minor children's stated preference, yet no evidence was submitted to substantiate this claim. In addition, defendant attributes the children's preference to the fears and stress resultant from plaintiff's move, yet ignores that Martha was evidencing sufficient anxiety and depression to necessitate psychological intervention before plaintiff initiated the domicile change proceedings. In addition, we find it somewhat hypocritical for defendant to attribute the stress experienced by the minor children to plaintiff's residence change when she had been the parent to initially suggest moving with the children to another state or community within Michigan but ultimately elected to remain in her current home. Based on the ages of the minor children and their clearly expressed preference, the trial court correctly weighed this factor in favor of plaintiff.

Factor (j) pertains to "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). In favoring plaintiff on this factor, the trial court observed that "[e]ven in conflicts, Plaintiff took Defendant's side and ordered the children to obey Defendant and her rules." In particular, "[d]efendant does not even allege that [p]laintiff undermines her. The closest she comes is to claim that he abdicated co-parenting by straddling

-10-

both Michigan and Kentucky and now wants to cut her out by changing the children's domicile." There was no evidence adduced that plaintiff ever verbally demeaned defendant to others or the minor children. In fact, the record indicates the opposite, stating that he was routinely supportive of her and would intervene with the minor children while in her custody, when requested by defendant. Testimony further indicated that plaintiff was willing to accommodate defendant's requests regarding parenting time with the children, was voluntarily offering to pay for their transportation to assure parenting time with defendant, and had no demonstrated history of undermining defendant to the minor children or interfering with her parenting time.

In contrast, defendant admitted to making frequent negative statements regarding plaintiff and his wife to the children and in the community. Evidence suggested that defendant did not properly include plaintiff or indicate his correct phone number on the emergency contact card at school for Martha, which resulted in a delay in him being notified of her hospitalization. Although defendant alleged plaintiff was not responsive to her communications, the evidence indicated that he would respond in a timely manner, given both his work situation and distance when contacted. Plaintiff would also apprise defendant of any situations that arose during his parenting time regarding the minor children, but defendant admittedly did not reciprocate. Further, defendant acknowledged that she would routinely ignore attempts by plaintiff to communicate with her by arbitrarily deciding not to open emails from plaintiff. Premised on defendant's lack of reciprocity in co-parenting with plaintiff, the trial court correctly evaluated factor (j) as favoring plaintiff.

Finally, the trial court determined that factor (l), comprising "any other factors considered by the court to be relevant to a particular child custody dispute," was inapplicable. MCL 722.23(j). In alleging error on this factor, defendant asserts the "court should have recognized that the children's best interests control here, and just as it found in 2008, the children need both of their parents involved in their day to day lives to flourish." Defendant contends that the only reason this dispute arose was because plaintiff's current wife prefers to live in Kentucky, which does not comprise "a valid reason to disrupt the children's joint established custodial environment with both parents." She further asserts that the failure of the trial court "to consider the backdrop of this domicile case amounts to an abuse of discretion." First, defendant's assertions regarding this factor comprise mere allegations with the absence of citation to any legal authority. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Berger*, 277 Mich App at 715 (citation omitted). Second, the trial court frequently referenced the history of this litigation in rendering its opinion and decision. As such, the determinations made regarding a change of domicile did not occur in a vacuum as suggested by defendant. Third, defendant's contention that the sole basis for plaintiff's desire to change domicile is the residence of his current wife demonstrates her inexplicable denial of the seriousness of the issues that have arisen pertaining to the well-being of her children. It further ignores that plaintiff's wife testified that she had primarily remained in Kentucky since their marriage and that plaintiff has, for an extended time period, traveled between states in an attempt to maintain the initial custody determination and exercise his parenting time.

Defendant's failure to recognize and acknowledge that significant concerns have arisen after the initial custody determination, which suggest deterioration in the benefits afforded by the initial custody award, only serves to further substantiate the trial court's ultimate determination on the best interest factors in this case.

D.  Parenting Time

Defendant also challenges the parenting time schedule delineated by the trial court, suggesting it abdicated its responsibility in simply adopting the schedule suggested by plaintiff. "Although appellate review of parenting-time orders is de novo, this Court must affirm the trial court unless its findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Berger*, 277 Mich App at 716.  In accordance with decisions pertaining to custody, a trial court must decide issues of parenting time on the basis of the best interests of the child.  *Id.*  In accordance with MCL 722.27a(1):

> Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents.  Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

Defendant's allegation that the trial court adopted a parenting time schedule consistent with the schedule proposed by plaintiff is correct.  Contrary, however, to her assertion that this similarity evinces bias or an abdication of the trial court's responsibility, reality dictates that such a schedule is the only possible outcome, given the distance between the parties, to achieve the stated purpose of providing the children greater stability and oversight during the school year. Defendant is provided unfettered access by telephone and social media to the minor children, and her contact is encouraged.  Each year she is to receive two-thirds of the summer vacations for the minor children, one-half of the Christmas holiday, and all of their spring breaks.  Plaintiff has voluntarily offered to provide the costs incurred for this transport to facilitate and assure defendant's parenting time.  Defendant may also have parenting time in Kentucky with the minor children upon the provision of sufficient notice to plaintiff and with the proviso that such visits do not interfere with the children's school attendance.  Defendant suggests this last provision is a hollow offer because she is unable to drive.  This statement ignores the fact that the defendant has plenty of adult children and other family members who are capable of providing her with transportation.

The trial court's parenting time order was supported by the evidence adduced and a realistic response to the concerns necessitating the change of domicile.  The order will likely ensure the children's attendance and improved academic performance and assist in alleviating the current stressors and strains being experienced between defendant and the children under the previous schedule and conditions.  Her suggestion that she should have been provided parenting time for the entire summer, every holiday, and every other weekend suggests, at least to this Court, that defendant's concerns are primarily selfish in suggesting that the children should be routinely subjected to hours of travel every other week and ignores the disruptive nature of such a suggestion.  Furthermore, defendant did not propose an alternative schedule to the trial court but merely stood adamant regarding her contention that the current schedule of equal days should remain in place.

"This Court has recognized that a change in domicile will almost always alter the parties' parenting time schedule to some extent and has, thus, held that the parenting time schedule need not be equal to the prior parenting time schedule in all respects. Parenting time is granted if it is in the best interest of the child and in a frequency, duration, and type reasonably calculated to promote strong parent-child relationships." *Brown v Loveman*, 260 Mich App 576, 595; 680 NW2d 432 (2004) (citations omitted). While defendant's time with the minor children is not at the prior level, which entailed an equal sharing of time with the children, it is sufficient to maintain her relationship with the children and the arrangement may actually facilitate an improvement in their interactions. Given the demonstrated needs of the children, the parenting schedule adopted by the trial court is consistent with their best interests, while simultaneously promoting defendant's relationship with her daughters.

Defendant also asserted that the trial court erred in this matter by assuming or accepting that it had to choose between two good parents, by granting a change of domicile, when a reasonable alternative was to retain the current arrangement. This is a mischaracterization of the trial court's evaluation. The trial court specifically rejected defendant's contention that the children should remain in Michigan in their current residence and schools, while plaintiff attempts to accommodate both his home life in Kentucky and his obligations in Michigan. The trial court noted that such a proposed solution "would increase the stress and anxiety of the children, while keeping them in virtually the same environment with the same problematic dynamics." In sum, defendant's contention reflects a focus on her personal preferences rather than a consideration of the best interests of the children.

Finally, due to the repetition of allegations by defendant made in conjunction with her arguments under this issue pertaining to the bias of the trial court, we will review the contention of bias separately, *infra*.

## II. ATTORNEY FEES AND COSTS

Defendant asserts the trial court erred in denying her request for attorney fees. Defendant's assertion of error is based on both the law of the case doctrine and MCR 3.206(C). "Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010) (citation omitted). Further:

> This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. A trial court's findings of fact . . . may not be set aside unless they are clearly erroneous. [*Id.* (citations omitted).]

This Court reviews de novo, as an issue of law, whether the law of the case doctrine applies. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

First, we must address defendant's assertion that the law-of-the-case doctrine applies because of this court's prior ruling following the appeal of the judgment of divorce.[2] On remand, the trial court, consistent with this Court's instruction, awarded defendant $16,633.82 in post-judgment attorney fees. In addition, the trial court granted defendant's request for appellate attorney fees in the amount of $30,378.24, stating, "The Court of Appeals awarded Defendant's counsel all the requested attorney fees incurred at trial, and the same rationale would apply to appellate fees." Defendant now seeks plaintiff to be responsible for her attorney fees for the change of domicile action and anticipated attorney fees in conjunction with this appeal.

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012). "[T]he law-of-the-case doctrine only applies to issues actually decided—implicitly or explicitly—on appeal." *Kasben*, 278 Mich App at 470.

> The law of the case doctrine's rationale is to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit; the doctrine does not limit an appellate court's power but, rather, is a discretionary rule of practice. A trial court fails to follow the law of the case when it revisits a matter on which this Court has already ruled. [*Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007) (citation omitted).]

Defendant seeks to improperly expand the law of the case doctrine. The trial court followed this Court's directive on remand pertaining to the decisions made in conjunction with the judgment of divorce. However, the divorce is not at issue in this case. Instead, plaintiff is seeking attorney fees for the change of domicile matter, which arose more than four years later. The prior decision regarding the award of attorney fees in the divorce case does not automatically entitle defendant to an award of attorney fees in this case because this case presents a new issue. Defendant's asserted need for assistance in the payment of her attorney fees necessitates a re-evaluation of the current circumstances and any changes that have occurred since the prior rulings. Therefore, the doctrine is inapplicable. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

To do as defendant suggests and automatically require plaintiff to be responsible for defendant's attorney fees ad infinitum and without re-evaluation would constitute an improper expansion of the doctrine. To follow or implement defendant's position regarding the application of the law-of-the-case doctrine would comprise a mere rubber stamp of prior decisions on the same subject matter but which encompass new or different proceedings

---

[2] *Hinsberg v Hinsberg*, unpublished opinion per curiam of the Court of Appeals, issued August 19, 2010 (Docket No. 290481). We note that the dissenting opinion stated that "[a] review of the record indicates that [defendant] hired numerous attorneys during the duration of this litigation, and she also refused to accept mediation or continue with the mediation process. The record also reflects that [plaintiff] paid for the above mediation. On the basis of the total record, I conclude that the trial judge did not abuse his discretion when allocating attorney fees." *Id*. at 10.

involving the same litigants. This would result in an automatic presumption of entitlement rather than a reasoned analysis.

Next, this Court must address defendant's assertion of entitlement to attorney fees under MCR 3.206(C). "Michigan follows the 'American rule' with respect to the payment of attorney fees and costs. Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v Sterling Hights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005) (citation omitted). The American rule is expressed within MCL 600.2405(6), which provides that "[a]ny attorney fees authorized by statute or by court rule" may be awarded as costs. *Haliw*, 471 Mich at 707. "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(C)." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008), quoting *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Defendant sought the payment of her attorney fees incurred from the change of domicile proceedings along with anticipatory appellate fees in accordance with MCR 3.206(C), which states:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

Defendant's claim is specifically brought pursuant to MCR 3.206(C)(2)(a).

"This Court has interpreted this rule to require an award of attorney fees in a divorce action 'only as necessary to enable a party to prosecute or defend a suit.' " *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010), quoting *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). "[A] party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702; see also *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). In addition, "[t]he party claiming entitlement to costs and fees has the burden of proving that the amount requested is reasonable." *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 683; 713 NW2d 814 (2006).

As discussed by this Court:

> Attorney fees in a divorce action may be awarded when a party needs financial assistance to prosecute or defend the suit. That is, a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support. Pursuant to MCR 3.206(C)(2)(a), the party requesting the fees

must allege facts sufficient to show that he or she is unable to bear the expense of the action, and that the other party is able to pay. [*Smith*, 278 Mich App at 207 (citations and quotation marks omitted).]

Defendant has failed to prove need.

Defendant receives approximately $62,000 a year from plaintiff in spousal and child support. Plaintiff also provides defendant's medical insurance. While plaintiff's salary is substantially higher with a base income of $235,000 a year, the trial court calculated, and it has not been disputed, that plaintiff's financial burdens are also significant, including having already been ordered to pay in excess of $83,000 toward the attorney fees incurred by defendant from the initial divorce action. As a consequence, the trial court calculated that plaintiff has approximately $7,000 a month to pay his household expenses, which "is just over $1,800 more than Defendant has monthly, which is hardly a huge disparity."

As referenced by the trial court, there was some testimony that defendant used the threat of increasing or escalating attorney fees as a means to extort plaintiff's cooperation to not pursue a change of domicile for Annie. Although denied by defendant's counsel, plaintiff's attorney suggested she was told that defendant's attorney fees were at $35,000 and increasing,

and that [plaintiff] would have to pay all of the fees because he's always had to pay all of the fees. They were aware that you would have them pay all of the fees – him all of the fees because that's what's always happened in the past. On more than one occasion, we were told, because the bill went from $30,000 to close to $35,000, that if Annie was allowed to stay and Martha went, then [plaintiff] wouldn't have to pay and that was relayed to [plaintiff].

Defendant's counsel objected to the statement as inaccurate and a violation of settlement negotiations under MRE 408, stating: "We were trying to settle this case because it's not good for these children to be litigating. It had nothing to do with fees though." Defendant's counsel indicated the verbal exchange with plaintiff's attorney was to inquire if plaintiff "considered the fact that if we continue to litigate this, that there will be – I will go after fees. That's what I said. And the fees to date are about $30,000. I didn't say trade Annie for $30,000 . . ."

MRE 408 states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is present in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

-16-

In this instance, the reference of these discussions by the trial court was violative of MRE 408. The issue of attorneys fees must be re-evaluated by the trial court in light of this ruling and in light of our child support ruling, *infra*.

## III.  DISQUALIFICATION

Defendant asserts on appeal that the trial judge should be disqualified from hearing future proceedings in this matter premised on his bias against defendant.  The issue of disqualification was never raised in the trial court; however, at the hearing on the motion for a stay and attorney fees, defendant's counsel implied bias by the trial court.  At that hearing, defendant's counsel suggested extrajudicial conduct by the trial court by implying that plaintiff somehow ascertained the trial court's ruling before it was issued.  Upon challenge by the trial court for this statement, defendant's counsel backed away from her position, stating, "No. I would never make a comment like that."

To preserve an issue of judicial qualification for appeal to this Court, a party is required to first seek disqualification in the trial court.  If the trial court judge denies the request for disqualification, the matter is referred to the chief judge for review.  MCR 2.003(C)(3); *Welch v Dist Court*, 215 Mich App 253, 258; 545 NW2d 15 (1996).  Because defendant raises the issue of judicial disqualification for the first time on appeal, it is not preserved, and this Court's review is for plain error affecting defendant's substantial rights.  *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001).

To disqualify a judge on the basis of bias, a showing of both actual and personal prejudice is required.  *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). The challenged bias "must have its origin in events or sources of information gleaned outside the judicial proceeding." *Id*.  The opinions of a judge, developed on the basis of facts or events occurring in the proceeding will not serve as a reason for disqualification "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. at 496 (citation omitted).  The party asserting bias or partiality has a heavy burden to overcome the presumption of impartiality. *Id*. at 497.  It is firmly established that repeated rulings against a litigant, even if the rulings are found to be erroneous, do not establish a basis for disqualification. *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995).

Defendant asserts that the trial court failed to impartially evaluate the evidence and was improperly influenced by its prior perceptions of defendant as evidenced by its rulings in favor of plaintiff.  In accordance with MCR 2.003(C)(1)(a), a judge is subject to disqualification when "[t]he judge is biased or prejudiced for or against a party or attorney."

Defendant's contention of bias and the necessity for disqualification is unfounded.  A review of the transcripts shows the trial court to have been even-handed in its dealings with counsel representing the parties and an absence of any behavior on the part of the trial judge to suggest a negative or a biased attitude or treatment of defendant, her counsel, or witnesses.  The mere fact that defendant's case was not persuasive to the trial court is not indicative of bias. Although the trial judge deemed plaintiff to be an exemplary and more effective parent, he was also complimentary of defendant and did not question her motivations or sincerity in the proceedings.  Hence, there exists no basis in the record to support defendant's contention of bias.

In addition, defendant criticizes the trial judge for his failure to adequately consider the history of this case and its prior rulings while concurrently implying the trial court was biased in relying on its prior impressions and decisions. Defendant cannot have it both ways. The trial court's rulings demonstrate that it did not decide this matter in a vacuum. Instead, it recognized prior concerns that arose in the earlier litigation between the parties while still evaluating the current circumstances independently using its earlier experiences with the parties as context but not for purposes of predetermination. Hence, defendant's assertions of bias and the necessity for disqualification are without support in the record.

## IV. CHILD SUPPORT

On cross-appeal, plaintiff contends the trial court erred in not modifying his child support obligation to reflect the changes in custody and domicile. Plaintiff denies an agreement with defendant to maintain the current rate of child support and argues that the trial court improperly deviated from the child support guidelines without elucidating its reasons. Defendant asserts that plaintiff's failure to request a modification comprised an agreement between the parties not to seek an alteration in child support or to voluntarily pay in excess of the formula. In addition, defendant argues that plaintiff's request for a modification of child support on appeal is contrary to the position he took on the subject in the trial court and is, therefore, precluded.

"Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). The issue of child support was not raised in the change of domicile proceedings, and plaintiff did not indicate in the lower court that he was seeking an adjustment in child support. The issue is, therefore, not preserved. As discussed in *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007) (citations omitted):

> Generally, this Court reviews child support orders and orders modifying support for an abuse of discretion. Whether the trial court properly acted within the child support guidelines is a question of law that this Court reviews de novo. This Court also reviews questions of statutory construction de novo.

This Court reviews unpreserved issues for plain error that affected substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). To demonstrate plain error, it must be shown that "(1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the trial court proceedings." See *Duray Dev*, *LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010).

MCL 552.605(2) requires that a trial court order child support "in an amount determined by application of the child support formula developed by the state friend of the court bureau [the Michigan Child Support Formula (MCSF) Manual]" unless the court determines that "application of the child support formula would be unjust or inappropriate." In accordance with MCL 552.605:

> (1) If a court orders the payment of child support under this or another act of the state, this section applies to that order.

(2) Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:

(a) The child support amount determined by application of the child support formula. How the child support order deviates from the child support formula.

(b) The value of property or other support awarded instead of the payment of child support, if applicable.

(c) The reasons why application of the child support formula would be unjust or inappropriate in the case.

(3) Subsection (2) does not prohibit the court from entering a child support order that is agreed to by the parties and that deviates from the child support formula, if the requirements of subsection (2) are met.

To determine the appropriate amount of child support, a trial court is required to follow the MCSF, or provide reasons for failing to do so. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). The determination of child support is for the court, not the parties. See, e.g., *Adamczyk v Adamczyk*, 155 Mich App 326, 328; 399 NW2d 508 (1986). The needs of the children comprise a primary consideration in a court's determination of the amount of child support to be paid, *Kalter v Kalter*, 155 Mich App 99, 104; 399 NW2d 455 (1986), in conjunction with the parents' ability to pay, *Wilkins v Wilkins*, 149 Mich App 779, 792; 386 NW2d 677 (1986). "[A] child support order may be modified by the trial court 'upon a showing by the petitioning party of a change in circumstances sufficient to justify [the] modification.'" *Clarke v Clarke*, 297 Mich App 172, 188-189; 823 NW2d 318 (2012) (citation omitted).

The trial court, despite the change in domicile and the determination that plaintiff was to have "joint custody with primary custody . . . for purposes of school," did not change plaintiff's current child support obligation. An explanation for the continued award of child support at the previous level was not provided even though plaintiff now retains the majority of overnights with the minor children and has been obligated to provide transportation costs for the children in conjunction with defendant's parenting time. It is difficult to comprehend why defendant would continue to receive child support, at the previous level, given the lack of a perceived benefit to the children of the expenditure of such funds because of the reduction in the amount of overnights defendant will be providing care for the children.

The trial court did not address the issue of child support other than to continue its payment to defendant unabated from the prior level. Plaintiff's assumption of responsibility for increased expenses for the minor children, based on their changed residence and costs of transportation to assure parenting time for defendant, was not addressed. The trial court did not comply with MCL 552.605(2) based on the failure to determine and apply the child support

formula given the change in the domicile and custodial situation of the children. In addition, the trial court did not provide an explanation for not applying the formula or for any deviation from the formula, which is presumed based on the increase in overnights of the children with plaintiff. As such, the matter of the modification of child support is remanded to the trial court for compliance with the applicable statutory procedures and the delineation of its findings, particularly with regard to any determination to not follow the formula.

Defendant contends that because plaintiff indicated he was not seeking a modification of child support, that this comprised an enforceable agreement between the parties. Plaintiff denies the existence of any such agreement. Plaintiff did not request a modification of support. However, he also only sought a change in domicile and did not request a change in custody. The trial court determined, based on the change of domicile, that a change in custody was warranted. Hence, plaintiff cannot be faulted for an outcome he did not pursue. Although parties may agree to an enhanced support obligation, it is natural to presume that in those situations the person receiving the additional support would also have the minor children, which is not the circumstance in this case.

In addition, defendant asserts that plaintiff's affirmative indication that he was not seeking a modification in child support cannot be challenged because it would be a position contrary to that taken in the trial court. "A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal." *Grant v AAA Mich/Wis, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006). "A litigant may not harbor error, to which he or she consented, as an appellate parachute." *In re Gazella*, 264 Mich App 668, 679; 692 NW2d 708 (2005), superseded by statute on other grounds MCL 712A.19b(5). There is a two-fold basis for the inapplicability of these limitations on the issue of child support modification in this matter. The first is that plaintiff merely stated he was not seeking a change in child support in conjunction with his motion for change of domicile. This does not comprise an agreement, which plaintiff is now seeking to avoid. The second, and related, reason for inapplicability is the recognition that child support orders are always open to review and modification "upon a finding of a substantial change in circumstances." MCL 552.517b(8).

Based on the lack of an evidentiary record for this Court's review, the issue of child support modification is remanded to the trial court for compliance with the relevant statutory provisions and explanation. See *Smeester v Pub-N-Grub, Inc*, 442 Mich 404, 408; 500 NW2d 742 (1993) ("If the Court of Appeals determines that the record below is insufficient to make [a] determination[], it should, while retaining jurisdiction, remand to the trial court for further development of the record regarding that and such other determinations as the Court of Appeals deems appropriate.").

We affirm in part, reverse in part and remand to the trial court for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens